UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

JAMIE E. YOUNG,

                  **Plaimtiff,**

      - against -

MARK LUGO, **Parole Officer;**
MR. McCLEAN, **Parole Officer;**
MR. PAYTON, **Parole Officer;**
MR. RAHAL, **Parole Officer;**
MR. BOTWINICK, **Parole Officer;**
MS. MENCARELLI, **Parole Officer;**
DETECTIVE ACEVEDO, **S.C. Police Officer;**
JOHN DOE (1 - 6), **S.C. Police Officers;**
DR. CARL GOODMAN, **E.R. Doctor B.M.H.;**
DR. JANE DOE, **E.R. Doctor B.M.H.;**
MR. HERNANDEZ, **Nurse B.M.H.;**
BMH SECURITY OFFICERS (1-5);

                  **Defendants.**

----------------------------------------------------------------X

# A M E N D E D
## VERIFIED COMPLAINT

## 18-CV-4216 (JBF) (AKT)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUL 31 2019 ★

LONG ISLAND OFFICE

## PRELIMINARY STATEMENT

1. At all times relevant, Plaintiff resided in the County of Suffolk, State of New York and was a parolee under the supervision of the New York State Department of Corrections an Community Services ("DOCCS").

2. At all times relevant, Defendants Mark Lugo ("Lugo"), Mr. McClean ("McClen"), Mr. Payton ("Payton"), Mr. Rehal (Rehal"), Mr, Botwinick ("Botwinick") and Ms. Mencarelli ("Menceralli") (collectively, the DOCCS Defendants") were employed by the New York State Department of Corrections and Community Supervision and

RECEIVED
JUL 31 2019
EDNY PRO SE OFFICE

performed their official duties at the Division of Parole's Suffolk County Area Office located at 550 Johnson Avenue, Bohemia, New York (Suffolk County).

3. At all times relevant, Defendant Acevedo ("Acevedo") was a police detective employed by the Suffolk County Police Department.

4. At all times relevant, Defendants "JOHN DOE 1-6" were police officers employed by the Suffolk County Police Department.

5. At all times relevant, Defendants Carl Goodman ("Goodman") and Jane Doe ("Dr. Jane Doe") were medical doctors employed at Brookhaven Memorial Hospital and were assigned to the Emergency Room Department.

6. At all times relevant, Defendant Mr. Hernandez ("Hernandez") was a nurse employed at Brookhaven Memorial Hospital and was assigned to the Emergency Room Department.

7. At all times relevant, Defendants BMH Security Officers (1-5) were hospital security staff at Brookhaven Memorial Hospital and were either assigned and/or dispatched to the Emergency Room Department.

8. The true name of the Plaintiff is as stated in the above caption of this action.

9. The true name of Defendant Mark Lugo, as such is known to the Plaintiff, is as stated in the above caption of this action.

10. The true "last" names of DOCCS Defendants McClean,

Payton, Rehal, Botwinick and Mencarelli, as such are known to the Plaintiff, are as stated in the above caption of this action.

11. The true "last" name of Defendant Police Detective Mr. Acevedo, as such is known to the Plaintiff, is as stated in the above caption of this action.

12. Because Plaintiff does _not_ currently know the true names of the six Suffolk County police officer defendants, Plaintiff temporarily assign said defendants (_collectively_) the fictitious identities of "JOHN DOE 1-6" until such time as each of their individual true identities may be ascertained.

13. The true name of Defendant Dr. Carl Goodman, as such is known to the Plaintiff, is as stated in the above caption of this action.

14. Because Plaintiff does _not_ currently know the true name of the _female_ doctor (whom Plaintiff believe was an anesthesiologist) that was also assigned to the Emergency Room at Brookhaven Memorial Hospital, Plaintiff temporarily assigns this defendant the fictitious identity of "DR. JANE DOE" until such time as said defendants' true identity may be ascertained.

15. The true "last" name of Defendant Nurse Hernandez, as such is known to the Plaintiff, is as stated in the above caption of this action.

16. Because Plaintiff does _not_ currently know the true names of the five hospital security officers (whom were either assigned

**Page 3 of 22**

and/or dispatched) to the Emergency Room Department at the Brookhaven Memorial Hospital, Plaintiff temporarily assign said defendants (*collectively*) the fictitious identities of "BMH SECURITY OFFICERS (1-5)" until such time as said defendants' true identities may be ascertained.

17.    Each defendant is herein sued in his and/or her individual and personally capacity.

18.    Plaintiff demands a trial by jury.


**JURISDICTIONAL STATEMENT**

Because the instant action is brought *primarily* pursuant to 42 U.S.C. § 1983 to redress the intentional and deliberate deprivation of rights, privileges and immunities secured to Plaintiff under the Fourth and Fourteenth Amendments of the United States Constitution, the United States District Court has original jurisdiction pursuant to, *inter alia*, 28 U.S.C. 1331.


**STATEMENT OF COMPLAINT**

The Defendants, both individually and collectively, did, intentionally and with malice aforethought, deliberately subject the Plaintiff to a wanton deprivation of clearly established fundamental substantive rights secured to Plaintiff under, *inter alia*, the Fourth and Fourteenth Amendments to the United States Constitution (and the Constitution and Laws of the State of New

York) in that, during and immediately following an arrest of Plaintiff under the pretense of technical revocations of Plaintiff's parole, the DOCCS defendants not only inflicted intentional, excessive and sadistic force upon Plaintiff for the very purpose of causing Plaintiff physical injury, extreme humiliation, and emotional distress, but said DOCCS defendants also, and indeed more culpably, *willfully conspired* with (a) Suffolk County police officers and (2) both medical and security personnel at the Brookhaven Memorial Hospital to calculatively cause Plaintiff to be *heavily sedated* against Plaintiffs' clearly and unambiguously expressed will for the expressed purpose of subjecting Plaintiff to an unauthorized, unprivileged and unwarranted intrusive, probing and humiliating body cavity search of Plaintiffs' rectum in a *pretextual* fishing expedition for alleged contraband and upon said search producing *zero* fruit said defendants embarked upon an elaborate and nefarious scheme to cover-up their egregious malfeasance, by, *inter alia*, knowingly falsifying – by way deliberate omission and intentional manufacturing of facts – Plaintiff's official medical and treatment records and the parole chronological revocation and summary reports resulting necessarily in Plaintiff being wrongfully, indeed unlawfully, criminally charged with a Class 'D' felony (to wit: Assault in the Second Degree in violation of New York Penal Law, Section 120.05) and a Class 'A' misdemeanor (to wit: Obstruction of

Governmental Administration in the Second Degree in violation Penal Law, Section 195.05) which could have potentially subjected Plaintiff to nearly a decade(or more) of imprisonment.

## **FACTUAL BASIS OF COMPLAINT**

1. On or about December 14, 2017, in the early evening thereof (at approx. 4:07PM), Plaintiff was taken into custody by Defendants Lugo and McClean for alleged technical violations of Plaintiff's conditions of release (Plaintiff is serving "lifetime" parole from a prior conviction).

2. Following the placing of Plaintiff into custody, in which Plaintiff did not resist, Defendants Lugo and McClean transported Plaintiff to the Suffolk County Police Department's ("SCPD") Fifth Precinct located at 125 Waverly Avenue in Patchogue, New York (Suffolk County): Plaintiff's arrest occurred at 25 Middle Avenue, Holtsville, New York (Suffolk County).

3. Upon arrival at the SCPD's 5th Precinct, Plaintiff's custody was transferred from the parole officials to the police officials for temporary detention and escort to the Suffolk County Jail.

4. At approximately 5:30PM, during the lodging phase into the Precinct, a preliminary strip search of Plaintiff's person was conducted by Defendant Acevedo in the presence of Defendant Lugo.

5. During said strip search, one of said officers observed a

swelling around Plaintiffs' anus and suggested that it appeared that Plaintiff may have had a foreign object secreted in his anus.

6. Plaintiff explained that he suffered from hemorrhoids and, despite the obvious embarrassment and knowing that he had nothing to hide, Plaintiff expressly offered to provide another viewing.

7. After a brief laughter between Defendants Lugo and Acevedo, the latter declined Plaintiff's offer and ordered Plaintiff to get redressed stating also that they would get a warrant to search Plaintiff's anus more thoroughly.

8. Upon Plaintiff getting redressed, Plaintiff was escorted to the booking area where Plaintiff was seated on a stool seat in front of a long metal table "under observation" (*see* Parole Chrono entry, dtd 12/14/17 at 6:00) with his hands handcuffed to the top of the table. *Id*. ("[Plaintiff] was put in a holding cell, cuffed in the front to a bench <u>under observation</u> . . . .")(emphasis added).

9. Not long thereafter, Defendants Lugo and McClean were cleared to leave the precinct thereby marking the *absolute* and *irretrievable* completion of Plaintiff's transfer of custody from that of the DOCCS parole officials and the replacing of Plaintiff's custody in to that of the Suffolk County Police Department for ultimate transfer of Plaintiff's custody in to that of the Suffolk County Sheriff's Office for temporary detention at the Suffolk County Jail pending resolution of parole revocation proceedings.

10.   It is to here be emphasized, that Plaintiff remained detained in the booking area of the 5th Precinct for at least 2-plus hours with his hands handcuffed (directly in front of him) to a metal table providing Plaintiff no ability to access any part of his body (*see* ¶ 8, *supra*, and Chrono Note cited therein) except perhaps to rub his chin or face against his thumbs (as Plaintiff's hands were cuffed palms facing each other, pinky fingers to table and thumbs facing upward).

11.   Following the departure of Defendants Lugo and McClean, two police officials spoke with Plaintiff advising Plaintiff that they were "going to get a search warrant" and "take [Plaintiff] to the hospital" to "see what's [Plaintiff's] ass."

12.   At some point later, however, Plaintiff *overheard* police officials discussing that their efforts to obtain a search warrant for a medical search of Plaintiff's rectum had been unsuccessful and, *as* *such*, their stated proposed remedy would be to summons the return of Defendants Lugo and McClean (the DOCCS parole officials that transferred Plaintiff's custody to the Suffolk County Police Department (*see* ¶ 9, *supra*) so that they (*i.e.*, Defendants Lugo and McClean) could "deal with this shit" (a reference plainly meaning to circumvent the warrant requirement and compelling Plaintiff's submission — under the *perverted* *pretense* of authorized parole supervision — to undergo a medical exam and procedure).

13.   Upon the return of parole officials (*i.e.*, Defendants

Lugo and Payton), Plaintiff was advised by said defendants that they (Defendants Lugo and Payton) would be taking charge of Plaintiff's custody to transport Plaintiff to Brookhaven Memorial Hospital for a medical search examination of Plaintiff's rectum.

14.   Plaintiff — obviously and fully cognizant of the fact that such *strategem* had been calculated precisely to disingenuously effect an end-run around both the Fourth and Fourteenth Amendments' "Warrant" and "Due Process" Clause, respectively, (*see* ¶¶ 11-13, *supra*) — made known *forthwith* his constitutional prerogative to resist without falter such *patently maligned agendum* advising emphatically (a) that Plaintiff wished to exercise his fundamental right to have a lawyer present because (b) Plaintiff had absolutely no intension of submitting to any medical tests or procedures in the absence of a valid warrant judicially directing Plaintiff's submission.

15.   Upon arrival at the hospital, Plaintiff — *in no uncertain terms* — restated his position that he wanted a lawyer and that he would **NOT** voluntarily submit to any medical testing, exam or procedure in the absence of an authoritative warrant commanding him to do so.

16.   Plaintiff hereby expressly allege that upon the DOCCS parole officials (*i.e.*, Defendants Lugo and McClean) having turned parole's custody of Plaintiff over the Suffolk County Police Department (*see* ¶ 9), Plaintiff — as a clearly established matter

**Page 9 of 22**

of law — was *ipso fact* no longer subject to parole supervision under the jurisdiction of the DOCCS and, *as such*, the DOCCS" parole officials (absent a certified disposition of the "Retaking and Temporary Detention Warrant [No. 799922]" restoring Plaintiff to DOCCS' custody) had no lawful authority to unilaterally reassume Plaintiff's custody to itself for purposes of transporting Plaintiff to Brookhaven Memorial Hospital to forcefully subject Plaintiff — against Plaintiff's expressed will — to an unwelcomed and unauthorized medical exam and procedure calculated exclusively to conduct an intrusive, degrading and, indeed unlawful, body cavity search and physical probing of Plaintiff's rectum.

17.   Plaintiff further alleges that it was a plain violation of his clearly established constitutional rights for the Suffolk County Police Department to return custody of Plaintiff to parole authorities for the sole purpose of having parole officials accomplish through a back door what police officials could not constitutionally accomplish through the front door.

18.   In paragraphs #'d 8 and 10, *supra*, Plaintiff refers to "Chrono Notes". These are consistent with summary log entries which are business records prepared by parole officials to chronicle (and indeed memorialize) the events relevant to Plaintiffs' December 14, 2017 arrest).[1]

---

[1] Although Plaintiff cannot state precisely what date he received a copy of said Chrono Notes (which consists of 5 pages and 22 entries), Plaintiff does attest to the fact that such were disclosed as "discovery" material for his (then anticipated) parole revocation proceeding.

19.   On page number 4 of said Chronos, an entry dated 12/14/17 at 7:00PM notes that the Suffolk County Jail Admissions/Holding area at the Riverhead facility[2] was "contacted . . . as to their procedure if [parole officials] believe [their] prisoner may have someone (sic) secreted in their rectum."

20.   Said same entry verifies that "[t]he LT on duty was contacted who stated that if any agency believes their prisoner has contraband they [said agency] can not bring [such prisoner] to either [the] Riverhead or [the] Yaphank facility."

21.   On said same page of said Chrono (*i.e.*, page 4), there appears an entry dated 12/14/17 at 8:00PM (a mere one hour later) that notes that the parole official contacted the Suffolk Area Office Bureau Chief "to get assistance with *possible* hospital detail. *Id.* (emphasis added).

22.   Plaintiff respectfully alleges here that between the points where Plaintiff overhead police officials discussing the fact that they had failed to procure a medical search warrant (*see* ¶ 12, *supra*), the direction that necessitated Defendants Lugo and Payton to return to the 5th Precinct and the Chrono entries from 7:00PM and 8:00PM on 12/14/17 (*see* ¶¶ 18-21, *supra*) and upon learning that the Suffolk County Jail would _NOT_ receive the Plaintiff into its custody under an open suspicion that Plaintiff may have concealed contraband, police and parole officials

---

[2] The Suffolk County Jail consists of two facilities, one in Riverhead and one in Yaphank

*conspired* to effect an *unlawful* re-transfer of Plaintiff's custody out of that of the Suffolk County Police Department and back in to that of the DOCCS' parole officials resulting in an underhanded circumvention of the clearly established constitutional prerequisite for an appropriate judicially authorized search warrant in order to force Plaintiff's submission into a medical exam and procedure against Plaintiffs' clearly expressed will to resist same and in knowing violation of Plaintiff's clearly established federal and state fundamental right to refuse medical treatment particularly where, *as here*, said counterfeit medical treatment had absolutely no medical nor medicinal value, but was rather the *apex* of a devious plot designed exclusively to the fulfillment of an ostensible objective to execute an intrusive, degrading and humiliating body cavity search and probing of the Plaintiff's rectum in vain hopes of (a) happening upon contraband and/or evidence of criminality and (b) otherwise certifying that Plaintiff did not possess any contraband and/or evidence of criminality (*see* ¶¶ 11-13; 17; 19-21, *supra*).

23.   Upon arrival at the Brookhaven Memorial Hospital, Plaintiff — consistent with his clearly stated position to resist any medical exams and/or procedures designed to effect an unlawful body cavity search of his rectum — adamantly, indeed *forcefully*, refused to *voluntarily* exit the transport vehicle.

24.   In response to Plaintiff's refusal to *voluntarily* exit

the transport vehicle (which consisted merely of Plaintiff curling up into a "fetal position" and tightening his leg muscles in a locked position), Defendants Lugo and Payton exerted extreme and excessive force upon Plaintiff's handcuffs and leg shackles to extract Plaintiff out of the transport vehicle.

25.   Plaintiff alleges that the extreme force from the pulling of the chains between the handcuffs and leg shackles caused Plaintiff significant pain and deep bruising.

26.   For many months thereafter, Plaintiff continued to experience significant pain and soreness, and had great difficulty with performance of daily activities of life (*e.g.*, even when bathing and attempting to wring his bath rag, Plaintiff experienced agonizing pain which shot through his wrists; Plaintiff even experienced significant discomfort brushing his teeth and wiping his rear-end after using the toilet as certain twists of the wrist produced pain.  Plaintiff even found it difficult to stand for even moderate periods of time from pain emanating from his ankles due to the extreme force of Defendants Lugo and Payton pulling on the chains of his leg shackles).

27.   After finally having been extracted out of the transport vehicle and having finally been brought inside the hospital, Plaintiff was taken into a triage/treatment room where there were an overwhelming presence of law enforcement personnel, including "numerous Suffolk County police [officials], hospital security

[personnel]" and, of course, parole officials (*see* Chrono entry dtd 12/14/17 at 8:43PM & 8:55PM).

28.  Also present in the treatment/triage room were "medical staff" (*see id.*)

29.  At this point, Plaintiff, *in no uncertain terms* once again made clear his election to "refuse[d] all tests and medical treatment to determine if [Plaintiff] had something in his rectum or otherwise in his body" (*see* Chrono entry dtd 12/14/17 at 8:55PM).

30.  Despite Plaintiff's *clear protestation* (*see ibid*), which was announced in the presence of each of the defendants, Defendants Parole Officer Lugo, Police Detective Acevedo and Dr. Goodman held a brief whispered sidebar which lasted approximately 45-seconds to one minute.

31.  Immediately following said whispered sidebar conversation between Defendants Parole Officer Lugo, Police Detective Acevedo and Dr. Goodman, Defendant Dr. Goodman ordered that Plaintiff be sedated (*ibid.*).

32.  At no time did Plaintiff ever give consent to be examined, treated or otherwise sedated.

33.  In compliant obedience to Defendant Dr. Goodman's patently unlawful order to sedate Plaintiff against Plaintiff's clearly expressed will, Defendants Lugo, Payton, Acevedo and all five of the BMH Security Officers pounced on Plaintiff to restrain

and immobilize Plaintiff so that Plaintiff could be forcefully sedated.

34. Plaintiff struggled in an effort to resist decrying that he did not wish to me medicated.

35. Upon overpowering Plaintiff and actually subduing Plaintiff, Defendant Dr. Jane Doe stabbed Plaintiff in the right shoulder with a hypodermic needle and Defendant Nurse Hernandez hooked Plaintiff up to various machines and instruments to record Plaintiff's vital signs.

36. The other Suffolk County police officers whom were present in the room and well aware that Plaintiff's rights were being violated did nothing to intervene on Plaintiff's behalf, but, rather, stood readily to lend their assistance.

37. Plaintiff expressly allege here that Defendant Dr. Goodman, acting with malice aforethought, conspired with parole and police officials (*i.e.*, Defendants Lugo and Acevedo, respectively) to violate Plaintiff's clearly established substantive right to refuse medical treatment particularly where, *as here*, said counterfeit medical treatment had neither any medical nor medicinal value, nor was such necessary for Plaintiff's safety or protection, but rather was purposed to the ostensible objective of the police and parole officials to effect an unlawful, intrusive and humiliating body cavity search of the Plaintiff's rectum in order to certify that Plaintiff was suitable for confinement.

38.   Upon information and belief, the source being the Chrono entry dated 12/14/17 at 8:55PM by Defendant Mencarelli, Defendant Dr. Goodman, after ordering and causing Plaintiff to be heavily sedated, ordered x-rays of Plaintiff's abdomen and pelvic areas and physically probed and penetrated Plaintiff's rectum with his fingers in furtherance of the police and parole officials' ostensible objective to effect an unlawful, unwarranted, intrusive and humiliating body cavity search of Plaintiff's rectum — all without Plaintiff's consent or any medical necessity therefore.

39.   The Mencarelli Chrono entry dated 12/14/2017 at 8:55PM reads, in its entirety (as provided to Plaintiff):

> "Writer [*i.e.*, Defendant Mencarelli] arrived at BMH, Subj. [*i.e.*, Plaintiff] was in hospital room with OSI, numerous Suffolk County Police, hospital security and medical staff.  Subj. was yelling and screaming that he did not want to be at the hospital and he would not take any tests.  He was writhing around on the Gurney. Subj. Refused all tests and medical treatment to determine if he had something in his rectum or otherwise in his body.  Doctors stated that they could sedate him [*i.e.*, Plaintiff] to do the tests for his safety.  Subj. [*i.e.*,Plaintiff] gave verbal permission to the Dr. [*i.e.*, Defendant Goodman] to be sedated in order to do the tests.  Subj. [*i.e.*, Plaintiff] was sedated and x-rayed and the x-ray was negative.  Dr's [*i.e.*, Defendant Goodman (and presumably Dr. Jane Doe)] then manually checked the Subj's [*i.e.*, Plaintiff] rectum and that was also negative.  Subj's clothes were checked and no contraband was found.  Vehicle rechecked, negative.  During this time Parole Officers Rehal and Botwinick arrived at BMH to assist."

Mencarelli Chrono, (bracket alteration added for clarity).

40.    Plaintiff emphatically alleges here that Defendant Mencarelli knowingly and intentionally falsified Plaintiff's Chrono report to the extent of alleging that Plaintiff "gave verbal permission to the DR. To be sedated in order to the tests."

41.    Plaintiff further alleges, indeed emphatically, that Defendant Mencarelli's sole motive for falsifying Plaintiff's Chrono was designed to cover up and conceal the unlawful conspiracy that plainly resulted in the intolerable violation of Plaintiff's fundamental and constitutional right to bodily integrity.

42.  Plaintiff's discharge report from the Brookhaven Memorial Hospital is dated "12/14/17" and is timed "11:06PM".  Said document is labeled "Aftercare Instructions" and consists of one page.

43.    In the section entitled "Procedures Done in Emergency Department" under "Procedure" said document plainly states "None Done."

44.    Plaintiff alleges that Defendant Dr. Goodman knowingly, intentionally and maliciously falsified Plaintiff's medical records by omitting any mention therein of the fact that Plaintiff had been given (against his will) a controlled substance to sedate Plaintiff.

45.    Plaintiff further alleges that Defendant Dr. Goodman knowingly, intentionally and maliciously falsified Plaintiff's medical records by omitting any mention therein of the fact that he [*i.e.,* Defendant Dr. Goodman] had performed (without either

Plaintiff's consent or any medical necessity therefore) an intrusive, invasive, humiliating and degrading body cavity search of Plaintiff's rectum by physically inserting his fingers (or some other object) into and penetrating Plaintiff's anus.

46. The best evidence, indeed overwhelming proof, of the nefarious conspiracy between Dr. Goodman and the police and parole officials is manifest in unmistakable terms set forth in detail in "Aftercare Instructions" both authored and signed by Defendant Dr. Goodman: Indeed, under the subheading entitled "Other Instructions" Defendant Dr. Goodman conveniently directs that Plaintiff is "***Fit for confinement***" (***emphasis added***).

47. It is here to be emphasized, that the xole basis for Plaintiff to have been taken to Brookhaven Memorial Hospital was a calculated ploy to have Plaintiff cleared for admittance into the Suffolk County Jail not withstanding Plaintiff's fundamental substantive due process right to bodily integrity.

48. Defendant Mencarelli made a further ***suspicious*** entry in Plaintiff's Chronos on 12/14/17 at 9:00PM (***only five minutes following her 8:55PM entry verifying the unfruitful and negative results for discovery of contraband in the unauthorized, intrusive, invasive and humiliating body cavity search and probe of Plaintiff's rectum and, of course, the negative results for the discovery of contraband in the search of Plaintiff's clothes and the re-check of the transport vehicle***).

49.   Said "*suspicious*" 9:00PM entry in Plaintiff's Chrono authored by Defendant Mencarelli states:

> "[Defendant] Lugo exited the room after Subj [*i.e.*, Plaintiff] was sedated and stated to writer [Defendant Mencarelli] 'my hands are killing me.  It's so swollen, it's tingling and I can't feel my fingers.'  Writer [Defendant Mencarelli] observed Inv. Lugo's hands to be red and very swollen.  Inv. Lugo stated that during the struggle he grabbed the chain to the leg irons and was kicked in the hand.  Writer [Defendant Mencarelli] advised Inv. Lugo to seek medical attention at the hospital ASAP and advise writer [Defendant Mencarelli] of the outcome."

Mencarelli Chrono, (bracket alteration added for clarity).

50.   Despite the fact that Defendant Mencarelli alleged — *albeit falsely* — that Plaintiff "gave verbal permission to . . . be sedated[,]" Plaintiff expressly alleges and positively affirms that he, at no time ever relinquished or retreated from his unyielding stance to resist and all medical exams, treatment and/or procedures purposed to determine whether Plaintiff had secreted contraband inside his rectum and Plaintiff absolutely did NOT give permission, verbal or otherwise, to be forcefully injected with an unknown controlled substance.

51.   Plaintiff further alleges that he did, in fact, struggle in an effort — albeit unsuccessful — to prevent and avoid being injected with a controlled substance that would undoubtedly incapacitate him, reduce his mental function to a medical stupor and otherwise essentially render him an invalid.

52.   Plaintiff further alleges that Defendants Lugo, Payton, Acevedo and the five BMH Security Officers did successfully struggle in opposition to Plaintiff in order to subdue Plaintiff thereby allowing (a) Defendant Dr. Jane Doe to inject Plaintiff with a powerful sedative and (b) Defendant Nurse Hernandez to hook Plaintiff up to machine and instruments to monitor Plaintiff's vital signs.

53.   Plaintiff expressly allege here, that, at no time, did either Defendant Dr. Goodman, Dr. Jane Doe or Nurse Hernandez ever inquire as to Plaintiff's medical history regarding, *inter alia*, whether Plaintiff had any allergies to any medications, whether Plaintiff was prescribed any medications, whether Plaintiff had taken any prescribed medications, whether Plaintiff had taken any illegal medications or other street drugs, whether Plaintiff had any psychiatric history nor any other medical concern relevant to injecting a patient with any controlled substance.

54.   Plaintiff expressly alleges and positively affirm that the parole and police officials, *knowingly acting with malice aforethought*, conspired to cause Plaintiff to be unlawfully charged indicted with a felony count of second degree assault (Penal Law § 120.05[3]) and a misdemeanor count of second degree obstruction of governmental administration (Penal Law § 195.05).

55. Plaintiff respectfully alleges that both the parole and the police official defendants knew *absolutely* and to a moral and legal

certainty that even <u>arguable</u> probable cause necessary to lawfully support and move forward with said criminal charges (identified in paragraph 54, *supra*) was, as a matter of law, patently non-existent and plainly lacking.

56.   Plaintiff expressly allege that each and every Defendant had personal involvement in the acts and omissions resulting in the knowing and intentional, indeed calculated, deprivation of Plaintiff's clearly established substantive constitutional rights in that, although some did not necessarily have "hands on," each were present and the circumstances were such that each plainly perceived that Plaintiff's constitutional rights were being violated and despite their affirmative duty to intercede they failed to.



## PLAINTIFF'S DEMANDS FOR RELIEF

1. **Compensatory Damages:** Plaintiff demands judgment against the defendants both severally and jointly and demands compensatory damages in the amount of $5,000,000.00 (Five Million Dollars);

2. **Punitive Damages:** Plaintiff demands judgment against the defendants both severally and jointly and demands punitive damages in the amount of $10,000,000.00 (Ten Million Dollars).

**Date:**     **July 31, 2019**
             **Central Islip, N.Y.**

                         Yours etc.,


                         Jamie E. Young,
                         **Plaintiff       (Pro Se')**
               c/o:  Nobby Carter
                     623 Bourdois Avenue
                     Bellport, New York 11713
                     (613) 644-3006


# A F F I R M A T I O N

I, JAMIE E. YOUNG, DO HEREBY AFFIRM UNDER PENALTY OF PERJURY THAT THE STATEMENTS MADE HEREIN AND ABOVE ARE TRUE AND ACCURATE ON PERSONAL KNOWLEDGE EXCEPT AS TO MATTERS EITHER SPECIFICALLY STATED OR REASONABLE CONSTRUED TO BE BASED UPON INFORMATION AND BELIEF BUT AS TO ANY SUCH MATTERS I BELIEVE THEM TO BE TRUE.

This Affirmation Is Hereby Duly
Executed On This 31st Day of July, 2017.


                         Jamie E. Young,

Page 22 of 22