UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
JAIME E. YOUNG,

                Plaintiff,                          **MEMORANDUM DECISION
                                                                                                                  AND ORDER**
                                                                                                                 18-CV-04216 (JS)(JMW)

          -against-

MARK LUGO, *et al.*,

                Defendants.
---------------------------------------------------------------X

**WICKS,** Magistrate Judge:

      This case arises out of the alleged physical abuse and misconduct occurring during Plaintiff's detention. Specifically, after being taken into custody for claimed parole violations, Plaintiff contends he was stripped searched, then brought, against his will, to Brookhaven Memorial Hospital ("BMH"). There, he was sedated, restrained, "connected to various machines," and subjected to a sedated cavity search. All this occurred after he had refused medical treatment. Subsequent to the medical treatment, false charges were filed against him. Plaintiff commenced this action, pursuant to 42 U.S.C. § 1983 and New York State law, against New York State parole officer Defendants Lugo, McLean, Payton, Rehal, Botwinick, and Mencarelli (the "State Defendants"), Suffolk County police officer Defendants Spilatros, Acevedo, and John Does 1–6, (the "County Defendants"), Defendants Drs. Goodman and Jane Doe, emergency room doctors at Defendant Hernandez, a nurse at BMH, and "BMH Security Officers 1–5." He alleges violations of the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution. Plaintiff brought the action initially appearing *pro se*. Years later, counsel appeared for Plaintiff and filed the current application.

      Before the Court at this time is Plaintiff's motion for leave to file a second amended complaint. (DE 140.) Because he has recently secured counsel, Plaintiff seeks to reformat the amended complaint to "more succinctly identify the causes of action, requested relief, and facts of" the case and to properly add Defendant Hernandez and Defendant Provenzano as named Defendants. Plaintiff further seeks a ruling that his proposed amendments regarding Defendant Hernandez and Defendant Provenzano, as well as all claims

against the remaining John Doe County Defendants, relate back to the date he filed the initial complaint. Finally, Plaintiff requests that the Court issue an order, pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997), directing the Suffolk County Attorney's Office to disclose the name of all officers that were present during the alleged events giving rise to this suit. The Defendants collectively oppose the motion, each asserting their own futility argument. (DE 136, 137, 139.) Defendant Goodman also adds contentions of Plaintiff's bad faith and delay to his argument. (DE 136.) For the reasons that follow, Plaintiff's motion is granted in part and denied in part.

## FACTUAL AND PROCEDURAL BACKGROUND

Given that there are no material differences between the amended complaint and proposed second amended complaint, the Court draws the alleged factual background from the latter. Plaintiff was, at all relevant times, a parolee under the supervision of the New York State Department of Correction and Community Supervision ("DOCCS"). (DE 148-1 at 5.) On December 14, 2017, Defendants Lugo and McLean—DOCCS parole officers—took Plaintiff into custody for violating his parole. (*Id.*) Defendants Lugo and McLean transported Plaintiff to the Suffolk County Police Department ("SCPD") Fifth Precinct for temporary detention pending his parole revocation hearing. (*Id.*)

After arriving at the precinct, Defendant Acevedo—a SCPD officer—conducted a strip search of Plaintiff. Defendants Lugo and McLean, as well as another officer, were present. (*Id.* at 6.) During the search, Defendant Acevedo noticed swelling around Plaintiff's anus and suggested that a foreign object was present therein. (*Id.*) Plaintiff explained that he suffered from hemorrhoids, causing Defendant Acevedo and Lugo to laugh and mock him. (*Id.*) Plaintiff responded with profane language, prompting Defendant Acevedo to state that they were going to get a search warrant to see "what was up his ass." (*Id.*) Plaintiff offered the officers an opportunity to search his anus again, but they declined and instructed him to put his clothes back on. (*Id.*)

Plaintiff was subsequently handcuffed to a table at the precinct and remained so for approximately two hours. (*Id.*) While handcuffed, SCPD officers advised Plaintiff that they "were going to get a search warrant" and "take [him] to the hospital" to "see what's in [his] ass." (*Id.* at 6–7.) Plaintiff also overheard

a conversation among SCPD officers regarding their inability to obtain a search warrant to conduct a medical search of Plaintiff's anus. (*Id.* at 7.) The officers stated that they were going to return Plaintiff to the parole officers so they would "deal with this shit." (*Id.*)

Eventually, Defendant Lugo returned with a different parole officer, Defendant Payton. (*Id.*) The officers stated that they would be taking custody of Plaintiff and were bringing him to jail. (*Id.*) However, once the officers placed Plaintiff in a vehicle and left the precinct, Plaintiff noticed they were not driving towards the jail and asked where they were going. (*Id.*) Defendants Lugo and Payton responded that they were en route to the hospital, prompting Plaintiff to make clear that he did not want to go to the hospital, that he refused any medical treatment, and that he wanted an attorney. (*Id.* at 7–8.) Defendants Lugo and Payton did not respond to Plaintiff's overtures. (*Id.* at 8.)

Upon their arrival at the hospital, Plaintiff curled into a fetal position and refused to leave the vehicle. (*Id.*) Defendants Lugo and Payton then pulled him out of the vehicle, with Defendant Lugo pulling Plaintiff out by his ankle shackles and Defendant Payton pulling him out by his handcuffs. (*Id.*) Plaintiff alleges that Defendants McLean, Rehal, Botwinick, Mencarelli, Acevedo, Spilotros, Provenzano, and John Does 1–4 watched these events take place and did not intervene. (*Id.*) Plaintiff alleges that being dragged in this matter caused him months-long pain and difficulty performing everyday tasks. (*Id.*)

Once inside the hospital, Plaintiff refused medical treatment. (*Id.* at 9.) A number of hospital employees and police officers, including Defendants Lugo, McLean, Payton, Rehal, Botwinick, Mencarelli, Acevedo, Spilotros, Provenzano, and John Does 1–4 forcefully restrained Plaintiff on a gurney. (*Id.*) Plaintiff then overheard a "whispered discussion" between Defendants Lugo and Acevedo and Defendant Goodman—a doctor at BMH—which lasted about two minutes. (*Id.*) Defendant Goodman then ordered that Plaintiff be sedated, prompting Defendants Lugo and Payton to restrain him while Defendant Hernandez, a hospital nurse, connected Plaintiff to various machines. (*Id.*) Plaintiff asked Defendant Hernandez if he was going to let them do this, to which Defendant Hernandez responded that he was "just doing his job." (*Id.*) Plaintiff was given a shot of Ketamine and fell unconscious. (*Id.*) Plaintiff was then x-rayed, which confirmed that no foreign instrument or body was inside of Plaintiff. (*Id.*) Defendants

Goodman and Hernandez nevertheless conducted a rectal exam, which came up clean. (*Id.*) Plaintiff was discharged with a diagnosis of hemorrhoids. (*Id.*) Plaintiff alleges that Defendants Goodman and Hernandez falsified their medical records to reflect that Plaintiff gave consent to the medical procedures performed. (*Id.* at 10.)

Following Plaintiff's discharge from the hospital, Defendant Lugo allegedly charged Plaintiff falsely with assault in the second degree—claiming Plaintiff kicked him in the thumb while they moved him from the vehicle into the hospital—as well as obstructing governmental administration. (*Id.* at 10–11.) Defendant Spilotros allegedly aided in the drafting of these charging documents, and Defendants Lugo, McLean, Payton, and Spilotros allegedly testified falsely at the grand jury proceedings against Plaintiff. (*Id.* at 11.)

On July 25, 2018, Plaintiff commenced this action *pro se* by filing a complaint. (DE 1.) Imbedded in the complaint was a request for a *Valentin* order directing Defendants to name all John Doe Defendants. (*Id.*) Plaintiff then filed several letters seeking an update on his request for the *Valentin* order. (DE 12, 14.) Indeed, Plaintiff remained determined to identify the John Doe Defendants throughout his time proceeding *pro se*. (*See, e.g.*, DE 19, 30, 36, 61.) On April 4, 2019, the Honorable Joseph F. Bianco granted Plaintiff leave to file an amended complaint (DE 16), which Plaintiff filed on July 30, 2019 (DE 30). On April 20, 2020, Defendant Goodman filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (DE 68.) That motion remains pending. Plaintiff secured counsel in June 2021 and filed the present motion for leave to amend the amended complaint on November 9, 2021. (DE 140.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 15 governs motions for leave to amend a complaint, which provides that leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2); *see Foman v. Davis*, 371 U.S. 178, 182 (1962) (noting that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits"). "Only undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . or futility

4

of the amendment will serve to prevent an amendment prior to trial." *Bodenmiller v. Cnty. of Suffolk*, 20-CV-0414 (JMA) (ARL), 2021 WL 4555884, at *4 (E.D.N.Y. Aug. 30, 2021) (internal quotation marks and citation omitted).

"Mere delay, . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (citation omitted). Bad faith may exist "where a party deliberately waited to see how they would fare on the prior motion to dismiss before requesting leave to amend" or "when a party withholds facts clearly known to it prior to the filing of the complaint, particularly when done with some ulterior purpose." *Bank v. Spark Energy, LLC*, 19-CV-04478 (PKC) (LB), 2020 WL 6873436, at *2 (E.D.N.Y. Nov. 23, 2020) (internal quotation marks and citations omitted). "In determining what constitutes prejudice, [courts] consider whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block*, 988 F.2d at 350 (internal quotation marks and citation omitted).

In determining whether an amendment is futile, courts consider whether plaintiff's proposed claims would survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Bodenmiller*, 2021 WL 4555884 at *4 ("An amendment is considered futile if the proposed claim would not survive a motion to dismiss made pursuant to Fed. R. Civ. P. 12(b)(6).") (citing *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339–40 (2d Cir. 2000)). Plaintiff's claims must therefore be construed in a light most favorable to plaintiff, and plaintiff "must merely show that [he] has at least colorable grounds for relief" to overcome objections of futility. *Id.* (citing *Foman*, 371 U.S. at 182; *Copantitla v. Fiskardo Estiatorio, Inc.*, No. 09 Civ. 1608(RJH)(JCF), 2010 WL 1327921, at *3 (S.D.N.Y. Apr. 5, 2010)).

## DISCUSSION

Plaintiff seeks leave to file a second amended complaint for two reasons, namely (1) to reformat the amended complaint—which Plaintiff filed proceeding *pro se*—to "more succinctly identify the causes of action, requested relief, and facts of" the case; and (2) to add Defendant Hernandez and Defendant

5

Provenzano as named Defendants. (DE 140 at 6.) Further, given that the statute of limitations on Plaintiff's claims against Defendant Hernandez, Defendant Provenzano, and unnamed County Defendants Hernandez have concededly run, Plaintiff seeks a ruling that his proposed amendments relate back to the date he filed the initial complaint. (*Id.*) Each set of Defendants challenge Plaintiff's motion on futility grounds, with Defendant Goodman adding contentions of bad faith and delay to his argument. The Court will address each Defendants' argument against Plaintiff's motion below.

### A. Defendant Goodman's Arguments

Defendant Goodman posits that Plaintiff's motion for leave to amend should be denied because (1) Plaintiff's motion was made in bad faith given Defendant Goodman's pending motion to dismiss; (2) Plaintiff's amendments would be futile as Defendant Goodman is not a state actor; and (3) Plaintiff has unduly delayed in seeking the amendment. (DE 136-7 at 3–7.) The Court finds each of Defendant Goodman's arguments unavailing.

As to Defendant Goodman's first argument, Plaintiff filing his motion for leave to amend in the shadow of Defendant Goodman's pending motion to dismiss does not evidence bad faith. Indeed, Courts routinely grant leave to amend the complaint notwithstanding the pendency of a motion to dismiss. *See, e.g.*, *Al Shuaibi v. McCament*, 17-CV-64 89-FPG-JWF, 2019 WL 1117511, at *1–2 (W.D.N.Y. Mar. 11, 2019) (granting motion for leave to amend despite a pending motion to dismiss); *Joint Stock Co. v. Infomir LLC*, 16 Civ. 1318 (GBD) (BCM), 2017 WL 2988249, at *1 (S.D.N.Y. Mar. 27, 2017) (same); *GWG MCA Cap., Inc. v. Nulook Cap., LLC*, 17-cv-1724 (ADS) (GRB), 2017 WL 8809368, at *1–3 (E.D.N.Y. Oct. 14, 2017). Moreover, should the Court grant Plaintiff's motion, the second amended complaint will be substantively the same as the amended complaint, obviating any need for Defendant Goodman to make sweeping changes to his pending motion to dismiss.

Defendant Goodman's second argument—that Plaintiff's motion should be denied as futile because Defendant Goodman is not a state actor—likewise fails to move the proverbial needle. While this Court is by no means pre-judging Defendant Goodman's pending motion to dismiss, Plaintiff has raised colorable grounds for relief in the proposed second amended complaint. Specifically, and drawing from Plaintiff's

6

opposition to Defendant Goodman's motion to dismiss, Plaintiff has made a colorable argument that Defendant Goodman qualified as a state actor based on the allegations set forth in the second amended complaint that he had a "whispered discussion" with Defendant Lugo and Acevedo and subsequently performed a rectal exam on Plaintiff. (DE 148-1 at 8–9; *compare* DE 118 *with Berlin v. Jetblue Airways Corp.*, 436 F. Supp. 550, 563 (E.D.N.Y. 2020) (outlining the three tests—the compulsion test, the joint action test, and the public function test—courts utilize to determine whether a nominally private entity may be attributed to the state).) Although Defendant Goodman may at the end of the day be successful on his motion to dismiss, Plaintiff has met the low burden of asserting a colorable argument that his proposed amendment is not futile.

Finally, Defendant Goodman's last argument regarding Plaintiff's delay is equally unavailing. "'Delay alone, in the absence of bad faith or prejudice, is not a sufficient reason for denying a motion to dismiss.'" *Wang v. Tesla, Inc.*, 338 F.R.D. 428, 434 (E.D.N.Y. 2021) (citing *Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 97 (S.D.N.Y. 2010)). As noted above, bad faith does not exist here. And, similarly, Defendant Goodman has not made a sufficient showing that he would be prejudiced should leave to file an amended complaint be granted. As such, delay is no reason to deny Plaintiff's motion.

In sum, Defendant Goodman has not established that grounds exist to warrant the denial of Plaintiff's motion for leave to amend.

**B. The State Defendants' Arguments**

For their part, the State Defendants take aim solely at the purported futility of Plaintiff's proposed second amended complaint. Specifically, the State Defendants contend that each of Plaintiff's asserted causes of action—false arrest, malicious prosecution, and excessive force—are inadequately pled, something that the proposed second amended complaint does not cure.

**i. False Arrest**

To make out a claim for false arrest, a plaintiff must allege that "(1) the defendant intended to confine him[;] (2) the plaintiff was conscious of the confinement[;] (3) the plaintiff did not consent to the confinement[;] and (4) the confinement was not otherwise privileged." *Jocks v. Tavernier*, 316 F.3d 128,

134–35 (2d Cir. 2003) (internal quotation marks and citation omitted).  The State Defendants contend that "[b]y using conclusory language and by failing to particularize the allegations [regarding false arrest] on a defendant-by-defendant basis, the amended complaint evades the personal involvement requirement for false arrest claims."  (DE 137 at 7.)  However, Plaintiff's proposed amended complaint appears to adequately allege false imprisonment as to the State Defendants.  Plaintiff alleges that despite his lack of consent to medical treatment, Defendants Lugo, McLean, Payton, Rehal, Botwinick, and Mencarelli "forcibly restrained [Plaintiff] on a gurney."  (DE 148-1 at 8–9.)  Moreover, Defendants Lugo and Payton are alleged to have later "pounced on Plaintiff to restrain and immobilize him so that he could be forcibly sedated."  (*Id.* at 9.)  These allegations seem, on their face, plausible and sufficient for pleading purposes to make out a claim for false imprisonment.  Of note, counsel for the State Defendants argued at the December 13, 2021 hearing that Plaintiff's proposed second amended complaint is deficient because it does not explicitly allege a lack of probable cause.  But "[p]laintiffs are not required to set forth a lack of probable cause in their complaint" where, as here, the claim is based on a warrantless arrest.  *Case v. City of N.Y.*, 233 F. Supp. 3d 372, 384–85 (S.D.N.Y. 2017) ("It is the defendant who bears the burden 'of proving that probable cause existed for the plaintiff's arrest' as an affirmative defense.") (citations omitted).  Thus, Plaintiff's false arrest claim as set forth in the proposed amended complaint does not appear futile.

    **ii.**    **Malicious Prosecution**

A malicious prosecution claim requires Plaintiff to allege "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions."  *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997) (internal quotation marks omitted).  The State Defendants curtly contend that "Plaintiff has alleged no factual allegations as to the actual malice requirement as to each State Defendant."  (DE 137 at 8.)  However, "[a]ctual malice does not require a plaintiff to prove that the defendant was motivated by spite or hatred, but instead that he initiated the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served."  *Castro v. Cnty. of Nassau*, 739 F. Supp. 2d 153, 170 (E.D.N.Y. 2010) (internal quotation

marks omitted) (citing *Rounseville v. Zahl*, 13 F.3d 625, 630 (2d Cir. 1994)). Actual malice may be—and indeed typically is—shown by circumstantial evidence, including a lack of probable cause. *Id.* (citation omitted). Plaintiff's proposed second amended complaint is replete with allegations that support the conclusion that the State Defendants acted with actual malice. By way of brief example, Plaintiff alleges that "Defendants categorically knew that no probable cause supported the allegations of [a]ssault in the [s]econd [d]egree and [o]bstruction of [g]overnmental [a]dministration that Defendants brought against Plaintiff, because Defendants themselves fabricated the claims, events, and evidence that gave rise to these charges." (DE 148-1 at 17.) This constitutes an allegation of actual malice, and thus belies the State Defendants' arguments.

    **iii.**   **Excessive Force**

Finally, excessive force claims "are properly analyzed under the Fourth Amendment's objective reasonableness standard," requiring courts to "pay careful attention to the facts and circumstances of each particular case, the severity of the crime at issue, whether the subject pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." *Hicks v. Craw*, 405 F. Supp. 3d 374, 381 (N.D.N.Y. 2019) (internal quotation marks and citations omitted). Indeed, as the State Defendants urge, "plaintiffs asserting claims under [Section] 1983 must show the personal involvement of each defendant." *Corley v. Shahid*, 89 F. Supp. 3d 518, 523 (E.D.N.Y. 2015) (citations omitted). "A police officer is personally involved in the use of excessive force if he either (1) directly participates in an assault; or (2) was present during the assault, but did not intervene on behalf of the victim *even though he had a reasonable opportunity to do so*." *Id.* (emphasis in original) (citation omitted).

Notwithstanding the State Defendants' overtures, Plaintiff appears to have alleged that the State Defendants exhibited excessive force, some directly and some by failing to intervene. As to Defendants Lugo and Payton, Plaintiff seems to adequately plead their direct use of excessive force in "dragg[ing] [Plaintiff] out of the patrol vehicle in order to force him to submit to a body cavity search, without any legal justification, causing Plaintiff significant pain from being restrained." (DE 148-1 at 14.) As to the other

9

State Defendants, Plaintiff alleges throughout the proposed second amended complaint that they either directly participated in the efforts of Defendants Lugo and Payton or were present, watched, and failed to intervene. (*See, e.g.*, *id.* at 6, 8, 9, 14.) Thus, these allegations suggest that Plaintiff's asserted excessive force claims as stated in the proposed second amended complaint are not futile.

\* \* \*

In sum, Plaintiff's false imprisonment, malicious prosecution, and excessive force claims against the State Defendants as set forth in the proposed second amended complaint do not appear to be futile. As such, Plaintiff's motion for leave to file the proposed second amended complaint will not be denied in that respect.

### C. The County Defendants' Arguments

Like their state counterparts, the County Defendants focus only on the claimed futility of Plaintiff's proposed amendment. The County Defendants' argument, however, revolves solely around the contention that Plaintiff's request to add Defendant Provenzano is untimely and does not relate back to the filing of the initial complaint.[1] (*See, e.g.*, DE 139-2.) Unlike their state counterparts, the County Defendants' futility argument holds water and warrants a partial denial of Plaintiff's motion.

Because Section 1983 does not provide a limitations period, courts apply state law statutes of limitations for personal injury actions in matters involving Section 1983 claims. *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002). Section 1983 claims filed in New York are therefore dictated by a three-year limitations period. *Id.* Although state law governs the limitations period in Section 1983 cases, Federal Rule of Civil Procedure 15 governs "John Doe substitution" cases—*i.e.* cases where the initial complaint features a John Doe defendant and the plaintiff later substitutes the actual defendant upon

---

[1] In his motion, Plaintiff applies for an order that his proposed amendments relate back to July 25, 2018, the date Plaintiff filed the initial complaint. This preemptive attempt to get a ruling, however, is nothing short of a request for an advisory opinion. It is axiomatic that advisory opinions may not be given by federal courts. *Abele v. Markle*, 452 F.2d 1121, 1124 (2d Cir. 1971) (citing *United States v. Fruehauf*, 365 U.S. 146, 157 (1961)). Although attempting— understandably—to get ahead of the County Defendants' futility arguments, Plaintiff is, in effect, requesting that the Court issue an advisory opinion as to whether his claims properly relate back to the genesis date of this lawsuit. Such an order is impermissible, and Plaintiff's motion is denied in that regard. The Court does, however, consider relation back as it relates to the County Defendants' futility argument.

10

discovery of his or her identity—where the plaintiff attempts to relate his or her claims against the substituted defendant back to the filing of the initial complaint. *Aslanidis v. U.S. Line, Inc.*, 7 F.3d 1067, 1075 (2d Cir. 1993).

The Second Circuit has explicitly rejected the applicability of Rule 15(c)(1)(C) in John Doe substitution cases because such substitutions, by their nature, do not constitute a "mistake of identity" as required by the Rule and thus cannot relate back for that reason.[2] *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013); *see Boston v. Suffolk Cnty, N.Y.*, 326 F. Supp. 3d 1, 11 (E.D.N.Y. 2018). Left for plaintiffs, however, is Rule 15(c)(1)(A), which permits an amended pleading to relate back when "the law that provides the applicable statute of limitations allows relation back." Fed. R. Civ. P. 15(c)(1)(A). New York law provides a procedure for claims alleged against John Doe defendants, stating that

> [a] party who is ignorant, in whole or in part, of the name or identity of a person who may properly be made a party, may proceed against such person as an unknown party by designating so much of his name and identity as is known. If the name or remainder of the name becomes known all subsequent proceedings shall be taken under the true name and all prior proceedings shall be deemed amended accordingly.

N.Y. C.P.L.R. § 1024 (McKinney 2021).

Section 1024 permits John Doe substitutions *nunc pro tunc* so long as two requirements are met: plaintiff must "exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name," and must "describe the John Doe party 'in such form as will fairly apprise the party that he is the intended defendant.'" *Hogan*, 738 F.3d at 518–19 (collecting cases) (citation omitted). This provision "creates a special procedure for John Doe cases that focuses on notice to possible defendants rather than whether the failure to name the defendant was an excusable mistake." *Wilson v. The City of N.Y.*, No. 03 Civ. 2495(RLC), 2006 WL 2528468, at *3 (S.D.N.Y. Aug. 31, 2006).

Importantly, Section 1024's mandate that a plaintiff exercise due diligence prior to the running of the statute of limitations relates to an expected level of diligence exhibited *before* he or she resorts to filing a complaint with John Doe designations. *See Williams v. United States*, No. 07 Civ. 3018(RJS)(THK),

---

[2] Plaintiff's counsel at oral argument agreed that Rule 15(c)(1)(C) is inapplicable here as there is no claim of mistaken of identity.

11

2010 WL 963474, at *12 (S.D.N.Y. Feb. 25, 2010) ("*If* a plaintiff is unable to identify the defendant, he may commence the action against a 'John Doe' defendant 'describing the unknown party in such form as will fairly apprise the party that she is then intended defendant.'") (emphasis added) (citation omitted); *Bumpus v. N.Y.C. Transit Auth.*, 66 A.D.3d 26, 29–30, 883 N.Y.S.2d 99, 104 (2d Dep't 2009) ("One pitfall [of Section 1024] is that parties are *not to resort* to the 'Jane Doe' procedure unless they exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name and, despite such efforts, are unable to do so.") (citations omitted). Indeed, New York courts ordinarily require defendants to "present an affidavit stating that a diligent inquiry has been made to determine the names of such parties" when commencing an action with a named John Doe defendant. *Luckern v. Lyonsdale Energy Ltd. P'ship*, 229 A.D.2d 249, 253, 654 N.Y.S.2d 543, 546 (4th Dep't 1997) (citation omitted). Thus, only when a plaintiff proves unable, despite his or her exercise of due diligence, to identify the defendant may he or she commence an action and name John Doe defendants pursuant to Section 1024.

But CPLR 305-b further adds to the morass, requiring plaintiffs to "ascertain the identity of unknown 'Jane Doe' parties, and . . . serve process upon them, within 120 days from filing." *Bumpus*, 66 A.D.3d at 31, 883 N.Y.S.2d at 105; *see Luckern*, 229 A.D.2d at 255, 654 N.Y.S.2d at 546 ("[U]nder New York's new commencement-by-filing system, a claim asserted against unknown parties pursuant to CPLR 1024 is deemed to be interposed for [s]tatute of [l]imitations purposes when the "John Doe" summons with notice is filed with the clerk of the court and . . . plaintiffs then ha[ve] an additional 120 days to discover the identities of the unknown parties and to serve them with a copy of the summons pursuant to CPLR 306–b(a).").

In apparent contemplation of circumstances where plaintiffs—after a diligent search for the identity of the defendant—file complaints on the eve of the limitation period expiration date, CPLR 305-b then, in effect, tolls the statute of limitations for 120 days to allow for a period of service. *See Opiela v. May Indus. Corp.*, 10 A.D.3d 340, 341, 781 N.Y.S.2d 353 (1st Dep't 2004) ("Indeed, the statute [of limitations] was tolled for an additional 120 days after commencement of the action by filing (CPLR 306-b)."); *Strada v. City of N.Y.*, No. 11–CV–5735 (MKB), 2014 WL 3490306, at *5–6 (E.D.N.Y. July 11, 2014) ("If . . . [the]

conditions of [Section 1024] are satisfied, the statute of limitations is tolled for up to 120 days during which the plaintiff must identify the unknown defendants and serve process upon them.") (citations omitted). Although this 120-day period strikes as harsh and places plaintiffs in an "unenviable" position, CPLR 305-b contains two exceptions, the "good cause" and "interest of justice" exceptions, which permit courts to extend the period in certain circumstances. *Bumpus*, 66 A.D.3d at 31–32, 883 N.Y.S.2d at 105.

Plaintiff here cannot make use of Section 1024 to relate his claims against Defendant Provenzano back to the filing of the original complaint. At a threshold, nothing before the Court suggests that Plaintiff exercised due diligence to identify Defendant Provenzano *before* he filed the initial complaint on July 25, 2018. And that is precisely what is required by Section 1024. Plaintiff's first attempt at identifying Defendant Provenzano, along with several other defendants, occurred concomitant with the filing of the initial complaint when Plaintiff requested a *Valentin* order from the Court. (*See* DE 1; DE 140 at 12–13.) Although Plaintiff painstakingly describes his industrious attempts to identify the defendants after filing the initial complaint (DE 140 at 12–21), Plaintiff offers no recounting of the steps taken to ascertain the identities of these defendants *prior to* the commencement of this action. For this reason alone, Plaintiff is foreclosed from the safe harbor of Section 1024.

Even assuming Plaintiff exercised due diligence before initiating suit, the fact that Plaintiff identified Defendant Provenzano before the limitations period expired also bars Plaintiff from utilizing Section 1024. Specifically, the County Defendants disclosed Defendant Provenzano's name in discovery on October 6, 2020. (DE 138 at 2.) This, of course, left Plaintiff with over two months before the limitations period expired to move for leave to amend to add Defendant Provenzano in place of his John Doe designation. Instead, Plaintiff waited until November 9, 2021—over a year later and after the expiration of the statute of limitations—to move to amend. Courts in this district have made clear that "Section 1024 provides no recourse in such an instance." *Strada*, 2014 WL 3490306 at *6 (denying motion for leave to amend based on the applicability of Section 1024 because plaintiff knew defendants' names prior to the expiration of the limitations period); *see Boston*, 326 F. Supp. 3d at 13 ("The [p]laintiff cannot avail himself of the benefits of § 1024 where it is clear that he had the names of [the defendants] before the statute of

13

limitations had run."); *Moran v. Cnty. of Suffolk*, No. 11 Civ. 3704(PKC)(GRB), 2015 WL 1321685, at *8 (E.D.N.Y. Mar. 24, 2015) ("Because [p]laintiff learned the true identity of the John Doe [d]efendant prior to the expiration of the statute of limitations, he cannot invoke § 1024 to now add [the officer] as a defendant to this action."). Because Plaintiff learned Defendant Provenzano's identity before the expiration of the limitations period, he cannot avail himself of the benefits of Section 1024. Plaintiff's motion for leave to amend is futile in that regard and therefore must be denied to the extent that it seeks to add Defendant Provenzano. Because the joining of any other County Defendant to this action would be futile for the same reasons, Plaintiff's motion for the issuance of a *Valentin* order is likewise denied.

## CONCLUSION

For the foregoing reasons, (1) Plaintiff's motion for leave to file a second amended complaint is granted, with the exception that it is denied to the extent that it seeks to add Defendant Provenzano; (2) Plaintiff's motion seeking an order that his claims relate back to the filing of the initial complaint is denied; and (3) Plaintiff's motion for the issuance of a *Valentin* order is denied. Plaintiff is directed to file the second amended complaint, revised consistent with this order, on or before December 27, 2021.

Dated: Central Islip, New York
December 17, 2021

**S O  O R D E R E D:**

/s/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge