UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JAIME E. YOUNG,

                     Plaintiff,                              **REPORT AND**
                                                         **RECOMMENDATION**
                                            18-CV-04216 (JS)(JMW)

            -against-

MARK LUGO, *et al.*,

                    Defendants.
------------------------------------------------------------X

**A P P E A R A N C E S:**

Frederick K. Brewington
Albert Darnell Manuel, III
Cobia Malik Powell
Leah Elizabeth Jackson
**Law Offices of Frederick K. Brewington**
556 Peninsula Boulevard
Hempstead, NY 11550
*Attorneys for Plaintiff Jamie E. Young*,

Christina H. Bedell
**NYS Office of the Attorney General**
Nassau Regional Office
200 Old Country Road, Suite 240
Mineola, NY 11501
*Attorneys for Defendants Mark Lugo, Orrison McLean,*
*Alonzo Payton, Joseph Rehal, Ross Botwinick, Catherine Mencarelli*

Greg M. Mondelli
Carl A. Formicola
**Lewis Johs Avallone Aviles, LLP**
1377 Motor Parkway, Suite 400
Islandia, New York 11749
*Attorneys for Carl Goodman*

Anthony M. Maffia
**Fumuso, Kelly, Swart, Farrell, Polin and Christesen LLP.**
110 Marcus Boulevard
Hauppauge, NY 11788
*Attorneys for Defendant Henry Hernandez*

Arlene S. Zwilling
**Suffolk County Attorney's Office**
P.O. Box 6100
H. Lee Dennison Building-Fifth Floor
100 Veterans Memorial Highway
Hauppauge, NY 11788-0099
*Attorneys for Defendants Alberto Acevedo
and Matthew Spilatros*

**WICKS,** Magistrate Judge:

Plaintiff Jamie E. Young commenced this action, pursuant to 42 U.S.C. §§ 1981 and 1983 and New York State law, against New York State parole officer Defendants Mark Lugo, Orrison McLean, Alonzo Payton, Joseph Rehal, Ross Botwinick, Catherine Mencarelli (the "State Defendants"), Suffolk County police officer Defendants Alberto Acevedo, Matthew Spilatros, and John Does 1-4 (the "County Defendants"), and Dr. Carl Goodman and Nurse Henry Hernandez (the "Medical Defendants"). Plaintiff alleges violations of the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution. Plaintiff brought the action initially—and proceeded throughout the majority of the case—as a *pro se* Plaintiff. Years later, counsel appeared for Plaintiff.

Once represented, as a first matter of business, Plaintiff sought to amend his pleading which, *inter alia*, sought to fully identify Defendant Henry Hernandez, who was previously named "Mr. Hernandez, Nurse B.M.H."[1] The motion was granted and Hernandez appeared in the action.

Before the Court on referral from the Honorable Joanna Seybert is Defendant Hernandez's motion to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). (DE 176-178.) For the reasons set forth below, the undersigned respectfully

---

[1] "B.M.H" was an abbreviation used to reference to Brookhaven Memorial Hospital.

recommends that Defendant Hernandez's motion be GRANTED, without further leave to replead.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background

The Court draws the alleged factual background from the Second Amended Complaint ("SAC") which are assumed true for the purposes of this motion to dismiss.

Plaintiff was, at all relevant times, a parolee under the supervision of the New York State Department of Correction and Community Supervision ("DOCCS").  (DE 158 at ¶ 19.)  On December 14, 2017, Defendants Lugo and McLean—DOCCS parole officers—took Plaintiff into custody on suspicion of violating his parole.  (*Id.* at ¶ 20.)  Defendants Lugo and McLean transported Plaintiff to the Suffolk County Police Department's ("SCPD") Fifth Precinct for temporary detention pending his parole revocation hearing.  (*Id.*)

After arriving at the precinct, Defendant Acevedo—a SCPD officer—conducted a strip search of Plaintiff.  (*Id.* at ¶ 22.)  Defendants Lugo and McLean, as well as another officer, were also present.  (*Id.*)  During the search, Defendant Acevedo noticed swelling around Plaintiff's anus and suggested that a foreign object was present therein.  (*Id.* at ¶ 23.)  Plaintiff explained that he suffered from hemorrhoids, causing Defendants Acevedo and Lugo to laugh and mock him, calling them bubbles.  (*Id.*)  Plaintiff responded with profane language, prompting Defendant Acevedo to state that they were going to get a search warrant to see "what was up his ass."  (*Id.* ¶ 24.)  Plaintiff again stated that it was a hemorrhoid.  (*Id.*)  Plaintiff then offered the officers an opportunity to search his anus again, but they declined and instructed him to put his clothes back on.  (*Id.*)

Plaintiff was subsequently handcuffed to a table at the precinct and remained so for approximately two hours.  (*Id.* at ¶ 25.)  While handcuffed, SCPD officers advised Plaintiff that they "were going to get a search warrant" and "take [him] to the hospital" to "see what's in [his] ass."  (*Id*.)  Plaintiff also overheard a conversation among SCPD officers regarding their inability to obtain a search warrant to conduct a medical search of Plaintiff's anus.  (*Id.*)  The officers stated that they were going to return Plaintiff to the parole officers so they would "deal with this shit."  (*Id.*)

Eventually, Defendant Lugo returned with a different parole officer, Defendant Payton.  (*Id.* ¶ 27.)  The officers stated that they would be taking custody of Plaintiff and were bringing him to jail.  (*Id.*)  However, once the officers placed Plaintiff in a vehicle and left the precinct, Plaintiff noticed they were not driving towards the jail and asked where they were going.  (*Id.*)  Defendants Lugo and Payton responded that they were en route to the hospital, prompting Plaintiff to make clear that he did not want to go to the hospital, that he refused any medical treatment, and that he wanted an attorney.  (*Id.*)  Defendants Lugo and Payton did not respond to Plaintiff's overtures.  (*Id*.)  Plaintiff again then repeatedly screamed that he did not want to go to the hospital, that he was refusing medical treatment, and that he wanted a lawyer.  (*Id.*)  Defendants Lugo and Payton again did not respond to Plaintiff.  (*Id.*)

Upon their arrival at the hospital, Plaintiff curled into a fetal position and refused to leave the vehicle.  (*Id.* at ¶ 28.)  Defendants Lugo and Payton then pulled him out of the vehicle, with Defendant Lugo pulling Plaintiff out by his ankle shackles and Defendant Payton pulling him out by his handcuffs.  (*Id.*)  Being removed in such fashion caused Plaintiff excruciating pain and also left bruising, swelling, and red welts on Plaintiff's hands for a significant amount of time.  (*Id.*)  Plaintiff alleges that this resulted in Plaintiff suffering prolonged pain and soreness and

impeded on his performance of daily tasks, such as bathing, brushing his teeth, wiping after using the toilet, and standing. (*Id.* at ¶ 29.) Defendants McLean, Rehal, Botwinick, Mencarelli, Acevedo, Spilotros, and John Does 1–4 watched these events take place and did not intervene. (*Id.* at ¶ 28.)

Once inside the hospital, Plaintiff refused medical treatment. (*Id.* at ¶ 30.) This lack of consent was documented in his medical records. (*Id.*) A number of hospital employees and police officers, including Defendants Lugo, McLean, Payton, Rehal, Botwinick, Mencarelli, Acevedo, Spilotros, and John Does 1–4 forcefully restrained Plaintiff on a gurney. (*Id.*) Plaintiff then overheard a "whispered discussion" between Defendants Lugo and Acevedo and Defendant Goodman—a doctor at BMH—which lasted about two minutes. (*Id.* at ¶ 31.) Defendant Goodman then ordered that Plaintiff be sedated, prompting Defendants Lugo and Payton to restrain him while Defendant Hernandez, a hospital nurse, connected Plaintiff to various machines. (*Id.*) Plaintiff asked Defendant Hernandez if he was going to let them do this, to which Defendant Hernandez responded that he was "just doing his job." (*Id.*) Plaintiff was given a shot of Ketamine and fell unconscious. (*Id.*) Plaintiff was then x-rayed, which confirmed that no foreign instrument or body was inside of Plaintiff. (*Id.* at ¶ 32.) Defendants Goodman and Hernandez then conducted a rectal exam, which came up clean. (*Id.*) Plaintiff was discharged with a diagnosis of hemorrhoids. (*Id.*) The search caused significant pain in Plaintiff's rectum. (*Id.*) At no point in time did Defendants Goodman or Hernandez make an effort to determine if Plaintiff was taking prescribed medications, whether Plaintiff had taken illegal medications or street drugs, or whether Plaintiff had any psychiatric history or other medical concerns which would make Ketamine dangerous for Plaintiff. (*Id.* at ¶ 33.) Defendants

Goodman and Mencarelli[2] also falsely reflected in their records that Plaintiff gave verbal consent to sedation despite policy requiring patients to give written consent to medical procedures.  (*Id.*)  Plaintiff's medical forms state that Plaintiff was unable to give consent.  (*Id.*)

Following Plaintiff's discharge from the hospital, Defendant Lugo then charged Plaintiff falsely with assault in the second degree—claiming Plaintiff kicked him in the thumb while they moved him from the vehicle into the hospital—as well as obstructing governmental administration.  (*Id.* at ¶ 36.)  Defendant Spilotros aided in the drafting of these charging documents and Defendants Lugo, McLean, Payton, and Spilotros testified falsely at the grand jury proceedings against Plaintiff.  (*Id.*)  Plaintiff's charges were ultimately dismissed.  (*Id.*)  Plaintiff spent a substantial period of time worried that he would be convicted of these charges.  (*Id.*)

### B.  Procedural Background

On July 25, 2018, Plaintiff commenced this action *pro se* by the filing of a complaint.  (DE 1.)  Imbedded in the complaint was a request for a *Valentin* order directing Defendants to name all John Doe Defendants.  (*Id.*)  This included Defendant Hernandez.  (*Id.*)  On September 4, 2018, January 2, 2019, and February 19, 2019, Plaintiff requested status updates regarding his request for a *Valentin* order.  (DE 12, 14.)

On April 4, 2019, the Court granted Plaintiff's *in forma pauperis* application.  (DE 16.)  On that same date, the Court dismissed the claims against the John Doe Defendants without prejudice due to Plaintiff's failure to provide sufficient allegations against Defendant Hernandez.  (*Id.*)  Additionally, then-District Judge Joseph F. Bianco granted Plaintiff leave to file an

---

[2] Based on the allegations made later in the SAC and Plaintiff's other filings, including his opposition brief, the Court infers that Plaintiff's reference to Mencarelli here is inadvertent and that Plaintiff meant to write "Hernandez."  (*See* DE 158 at ¶ 75; DE 179 at 3.)

amended complaint.  (*Id.*)  On April 25, 2019, the Court granted Plaintiff an extension to file the Amended Complaint and also denied Plaintiff's *Valentin* request, finding it more appropriate to wait until the filing of the Amended Complaint was complete.  On July 31, 2019, Plaintiff filed this Amended Complaint and renewed the *Valentin* order.  (DE 30.)

On October 2, 2019, the Court reviewed the Amended Complaint.  The Court held that Plaintiff's claims against the unnamed individuals shall proceed and, if their identities were ascertained during discovery, Plaintiff would be granted further leave to amend the Amended Complaint to include such new individuals.  (*Id.*)

Throughout October, the U.S. Marshal's Service attempted to serve Defendant Hernandez at Brookhaven National Hospital, however the hospital would not accept service on behalf of Defendant Hernandez.  (DE 33.)  On November 8, 2019, Plaintiff then requested another *Valentin* order directing Defendant Goodman to identify Defendant Hernandez and the unnamed defendants at the hospital.  (DE 36.)  The Court denied his request.  (DE 40.)

On March 23, 2020, the Court held an initial conference and directed Defendants to serve Rule 26(a) disclosures.  (DE 66.)  On April 20, 2020, Defendant Goodman filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (DE 68.)  This motion was later administratively terminated.  (*See* Electronic Order, dated Dec. 20, 2021.)

In July 2021, Plaintiff retained counsel.  (DE 115.)  On November 9, 2021, Plaintiff moved to amend his complaint. (DE 140.)  The Court granted Plaintiff's application to file a second amended complaint, with the exception that it was denied to the extent that Plaintiff sought to add Defendant Provenzano.  (DE 150.)  Plaintiff filed the SAC on December 27, 2021, and later filed a corrected SAC on January 5, 2022.  (DE 151; DE 158.)  Defendant Hernandez's counsel accepted service and appeared in the action on March 18, 2022.  (DE 169.)  On April 28,

2022, Defendant Hernandez filed the instant motion seeking dismissal of Plaintiff's claims against him. (DE 176.)

## II.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. When considering a motion to dismiss, the Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, this tenet does not apply to legal conclusions or "threadbare recitals of a cause of action's elements." *Iqbal*, 556 U.S. at 663. Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. More is required.

The above standards apply to *pro se* complaints as well, but in a less rigid manner. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotes & citations omitted). When considering a *pro se* complaint, the Court must interpret the pleading to raise the strongest claim plausibly suggested by the allegations. *Rosen v. N. Shore Towers Apartments, Inc.*, No. 11-CV-00752 RRM LB, 2011 WL 2550733, at *3 (E.D.N.Y. June 27, 2011).

However, because Plaintiff was represented by counsel when the operative complaint and motion to dismiss briefs were filed, the Court does not apply the forgiving construction rule applicable to *pro se* pleadings in the Second Circuit to the SAC here. *See Hayes v. Dep't of Educ. of City of New York*, 20 F. Supp. 3d 438, 446 (S.D.N.Y. 2014) ("Where, as here, a submission was drafted and submitted by a lawyer, no extra tolerance is appropriate").

## III.   DISCUSSION

### A. Plaintiff's Exhibits

Defendant Hernandez submits a host of exhibits for the Court to consider in support of his motion to dismiss; twelve exhibits attached to his moving papers and another two on reply. (DE 178, DE 181.)

It is well settled that in deciding a motion to dismiss under Rule 12(b)(6), a court may only consider the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference, and matters of which judicial notice may be taken. *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153-54 (2d Cir. 2002). Even if a document is not incorporated by reference, a court may nevertheless consider it when it is "integral" to the complaint, meaning the complaint relies heavily upon its terms and effect. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). Even so, it must be clear on the record that there is no dispute as to the document's authenticity, accuracy, or relevance. *Id.*

Once presented with extrinsic documents outside the pleadings, the court has two options: (1) exclude the extrinsic documents; or (2) on notice to the parties, convert the motion to one for summary judgment. *See* Fed. R. Civ. P. 12(b)-(d); *Chambers*, 282 F.3d at 154. The option to convert a motion to dismiss into one for summary judgment is in the court's discretion.

*Certified Multi-media Sols., Ltd. v. Preferred Contractors Ins. Co. Risk Retention Grp., LLC*, 150 F. Supp. 3d 228, 236 (E.D.N.Y. 2015), *aff'd*, 674 F. App'x 45 (2d Cir. 2017).

Should a court choose to convert a motion to dismiss into one for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *Sahu v. Union Carbide Corp.*, 548 F.3d 59, 67 (2d Cir. 2008). This ordinarily means the court must give notice *before* converting the 12(b)(6) motion to dismiss to one for summary judgment. *Id.* While the court should give explicit notice of its intent to convert a motion to dismiss into a motion for summary judgement, it is not always necessary, especially where the parties should have reasonably recognized the possibility that the motion might be converted into one for summary judgment. *Green v. Doukas*, 2000 WL 236471, at *2 (2d Cir. 2000). This is often found where both parties submit extrinsic evidence in support of their positions. *Id.*; *In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir. 1985) ("A party cannot complain of lack of a reasonable opportunity to present all material relevant to a motion for summary judgment when both parties have filed exhibits, affidavits, counter-affidavits, depositions, etc. in support of and in opposition to a motion to dismiss.")

Here, Plaintiff did not attach any exhibits to the SAC or incorporate any of the exhibits submitted by Defendant Hernandez by reference. Further, it cannot be said that Defendant Hernandez's exhibits—a declaration from a BMH Health Information Specialist, case filings, and emails and documents exchanged during discovery—are integral to the SAC in the sense that the SAC relies heavily on their terms and effect. *See DiFolco*, 622 F.3d at 111. Therefore, apart from the documents found in its own docket, the Court is unable to consider Defendant Hernandez's exhibits in its determination of the motion.

Furthermore, the Court in its discretion declines to suggest that the motion be converted to one for summary judgment.  The parties were not provided notice that the motion would be converted.  And even though Defendant Hernandez filed exhibits with its moving papers, presumably giving Plaintiff an indication that the motion may be converted, Plaintiff did not also rely on extrinsic information and explicitly opposed the use of exhibits.  *See Garcha v. City of Beacon*, 351 F. Supp. 2d 213, 216 (S.D.N.Y. 2005) ("Where both parties submit extrinsic evidence in support of their positions, a district court may fairly convert a motion to dismiss into one for summary judgment under Fed. R. Civ. P. 56").  Furthermore, Plaintiff took affirmative steps to strike Defendant Hernandez's reply for failing to conform to Judge Seybert's Individual Rules and stated, "Plaintiff does not consent to this matter being converted into a *Motion for Summary Judgment,* pursuant to Fed. R. Civ. P. 12(d)."  (DE 182) (emphasis in original.)  Defendant Hernandez did not comment on Plaintiff's objection, but instead offered to correct his submission.  (DE 183.)  Instead of responding to Plaintiff's objection by providing notice to the parties that the motion may be converted and giving them the opportunity to present all the material pertinent to the motion, the Court considered the argument raised in Plaintiff's opposition brief and stated it would be considered with the merits of the underlying motion.  (*See* Electronic Order, dated Oct. 31, 2022.)

Even if the Court finds its justified in converting Defendant Hernandez's motion to dismiss into one for summary judgment, undersigned respectfully recommends that in light of the circumstances, the Court refrain from doing so here.  *See Gross Found., Inc. v. Goldner*, No. 12 CIV. 1496 ILG, 2012 WL 6021441, at *5 (E.D.N.Y. Dec. 4, 2012) ("[E]ven where conversion is justified, a court may in its discretion choose not to").

**B. Statute of Limitations**

Defendant Hernandez argues that each claim raised against him in the SAC must be dismissed as barred by the statute of limitations.  (DE 177 at 8.)  Defendant Hernandez reasons that because the conduct giving rise to the allegations in the SAC occurred on December 14, 2017 (*see* DE 158 at 4), and the SAC was filed on December 27, 2021, Plaintiff's claims for violations of his constitutional rights under 42 U.S.C. § 1983 and negligence (three-year statute of limitations), medical malpractice (one and a half-year statute of limitations), and several accompany state-law torts (one-year statute of limitations), are untimely.  (DE 158.)  Defendant further argues that Plaintiff's untimely claims do not relate back to the filing of the initial complaint because Plaintiff was well aware of Defendant's full name prior to the expiration of the statute of limitations.  (*Id.* at 10-13.)

In opposition, Plaintiff argues that Plaintiff made diligent efforts to identify and serve Defendant Hernandez and that Defendant Hernandez, was, in fact, named and identified in the original complaint.  (DE 179 at 14-15.)  Plaintiff contends that the issue is rather that Defendant evaded service.  (*Id.*)

On reply, Defendant argues that Plaintiff does not dispute the statute of limitations on all claims has run, that Plaintiff knew the identity of Defendant before the statute of limitations expired, and that Plaintiff failed to offer any explanation as his delay in moving to add Defendant until after the statute of limitations had expired.  (DE 190.)

Section 1983 claims filed in New York are dictated by a three-year limitations period.  *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002).  Although state law governs the limitations period in Section 1983 cases, Federal Rule of Civil Procedure 15 governs "John Doe substitution" cases—*i.e.*, cases where the initial complaint features a John Doe defendant and the

plaintiff later substitutes the actual defendant upon discovery of his or her identity—where the plaintiff attempts to relate his or her claims against the substituted defendant back to the filing of the initial complaint. *Aslanidis v. U.S. Line, Inc.*, 7 F.3d 1067, 1075 (2d Cir. 1993).

The Second Circuit has explicitly rejected the applicability of Rule 15(c)(1)(C) in John Doe substitution cases because such substitutions, by their nature, do not constitute a "mistake of identity" as required by the Rule and thus cannot relate back for that reason. *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013); *see Boston v. Suffolk Cnty, N.Y.*, 326 F. Supp. 3d 1, 11 (E.D.N.Y. 2018).

Rule 15(c)(1)(A), however, permits an amended pleading to relate back when "the law that provides the applicable statute of limitations allows relation back." Fed. R. Civ. P. 15(c)(1)(A). CPLR § 1024 is the New York law which pertains to claims against John Doe defendants. That section reads as follows:

> [a] party who is ignorant, in whole or in part, of the name or identity of a person who may properly be made a party, may proceed against such person as an unknown party by designating so much of his name and identity as is known. If the name or remainder of the name becomes known all subsequent proceedings shall be taken under the true name and all prior proceedings shall be deemed amended accordingly.

N.Y. C.P.L.R. § 1024 (McKinney's).

CPLR § 1024 permits John Doe substitutions *nunc pro tunc* so long as two requirements are met: (1) plaintiff must "exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name," and (2) must "describe the John Doe party 'in such form as will fairly apprise the party that he is the intended defendant.'" *Hogan*, 738 F.3d at 518–19 (collecting cases) (citation omitted).

A third requirement is added based on the interplay between CPLR § 1024 and CPLR § 306-b. *DaCosta v. City of New York*, 296 F. Supp. 3d 569, 584 (E.D.N.Y. 2017). Pursuant to

CPLR § 306-b, "the newly-named defendant must be served within 120 days of the filing of the complaint." *Id.* (citing *Bumpus v. New York City Tr. Auth.*, 66 A.D.3d 26, 31–32, 883 N.Y.S.2d 99, 104-05 (N.Y. App. Div. 2009)).

CPLR §§ 1024 and 306-b work together. *Vasconcellos v. City of New York*, No. 12 CIV. 8445 CM, 2014 WL 4961441, at *8 (S.D.N.Y. Oct. 2, 2014). "Filing a 'John Doe' complaint under C.P.L.R. § 1024 'fixe[s] the point at which an action was commenced for statute of limitations purpose,' after which a plaintiff is 'required to ascertain the identity of unknown 'Jane Doe' parties, and to serve process upon them, within 120 days from filing.'" *Id.* (citing *Bumpus*, 66 A.D.3d at 31). Reading these provisions together, to obtain the benefits of CPLR §§ 306-b and 1024, a plaintiff must undertake diligent efforts to identify the unknown defendant before the expiration of the statute of limitations. *Id.* at *11. If diligent efforts are established, then the 120-day extension for service is triggered. *Id.* While the 120-day deadline set by CPLR § 306-b may seem harsh, a plaintiff who does not know the identity of a defendant is not without recourse. The court may extend the 120-day service provision upon a showing of good cause or in the interest of justice. *Bumpus*, 66 A.D.3d at 26.

Importantly, if a plaintiff becomes aware of an unknown party's identity prior to the expiration of the statute of limitations, but fails to amend his pleadings, any relation back under Rule 15(c)(1)(A) and CPLR § 1024 becomes unavailable. *Bos. v. Suffolk Cnty., New York*, 326 F. Supp. 3d 1, 13 (E.D.N.Y. 2018) ("The Plaintiff cannot avail himself of the benefits of § 1024 where it is clear that he had the names of [defendants] before the statute of limitations had run"); *James v. Suffolk Cnty. Corr. Facility*, No. 13CV2344JFBSIL, 2018 WL 3966688, at *7 (E.D.N.Y. June 26, 2018), *report and recommendation adopted*, No. 13CV2344JFBSIL, 2018 WL 3966241 (E.D.N.Y. Aug. 17, 2018) (finding relation back under Rule 15(c)(1)(A) and CPLR

14

§ 1024 to be unwarranted when plaintiff was "undoubtedly aware of [defendant's] identity prior to the statute of limitations date"). That is, once known, the party cannot delay in amending.

Here, the date of the incident in Plaintiff's SAC is December 14, 2017. Therefore, Plaintiff had until the following dates to engage in diligent efforts in light of the varying statutes of limitations on his claims: December 14, 2018, for all state-law tort claims; June 14, 2020, for the medical practice claim; and December 14, 2020, for the § 1983 and negligence claims. (*See* DE 177 at 8-10.) Plaintiff commenced this action by filing his initial complaint on July 25, 2018. (DE 1.)

Although the parties dispute the exact date that Plaintiff learned of Defendant's full identity, it is undisputed that Plaintiff did, in fact, learn of Defendant's full name prior to the expiration of the statute of limitations on Plaintiff's section 1983 and negligence claims. Defendant contends that Plaintiff first learned of Defendant's full name on August 6, 2019 (DE 177 at 10) and Plaintiff states that he learned of Defendant's full name on September 29, 2020. (DE 179 at 8.) Both of these dates come before the December 14, 2020 statute of limitation expiration for Plaintiff's section 1983 and negligence claims. Indeed, Plaintiff concedes that he learned of Defendant's identity "two [month's] before Plaintiff's statute of limitations for his § 1983 claims were set to expire. . ." (*Id.*) Because Plaintiff learned Defendant's identity before the expiration of the limitations period, he cannot avail himself of the benefits of CPLR § 1024. *Strada v. City of N.Y.*, No. 11–CV–5735 (MKB), 2014 WL 3490306, at *6 (E.D.N.Y. July 11, 2014) (denying motion for leave to amend based on the applicability of CPLR § 1024 because plaintiff knew defendants' names prior to the expiration of the limitations period); *Moran v. Cnty. of Suffolk*, No. 11 Civ. 3704(PKC)(GRB), 2015 WL 1321685, at *8 (E.D.N.Y. Mar. 24, 2015) ("Because [p]laintiff learned the true identity of the John Doe [d]efendant prior to the

expiration of the statute of limitations, he cannot invoke § 1024 to now add [the officer] as a defendant to this action"). Therefore, it is respectfully recommended that Plaintiff's section 1983 and negligence claims be dismissed as time barred.

Because Plaintiff's federal section 1983 claim against Defendant is dismissed, it is further recommended that the Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. *See Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well"); *Souhaite v. Cnty. of Nassau*, No. 12-CV-2698 SJF AKT, 2013 WL 4495186, at *6 (E.D.N.Y. Aug. 19, 2013) ("[A]ssuming *arguendo* without addressing the issue, that plaintiff's state law claims are indeed timely, the court should decline to exercise supplemental jurisdiction over plaintiff's state law claims due to the lack of any actionable federal claim").

In the event the District Judge disagrees with the undersigned's conclusions and recommendation concerning statute of limitations, the following alternative recommendations are respectfully made.

## C. State Action Under Section 1983

Defendant Hernandez argues that Plaintiff's claims under section 1983 further warrant dismissal because Defendant is a private individual, not a state actor, and therefore Plaintiff cannot maintain a section 1983 claim against him. (DE 177 at 13-18.) Defendant Hernandez contends that Plaintiff fails to allege any involvement by Defendant Hernandez with law enforcement present at the hospital. Specifically, that there are no factual allegations that Defendant Hernandez conferred with, took orders from, received instructions from, or acted on behalf of or at the request of a law enforcement officer. (*Id.* at 17.) Defendant Hernandez also

argues that any allegations which assert Defendant Hernandez did act jointly with law enforcement are impermissibly conclusory and vague. (*Id.*)

In opposition, Plaintiff posits that although Defendant Hernandez is a private nurse, the specific conduct committed by Defendant Hernandez—taking on police function by participating in the lawless sedation, forced x-rays and cavity search of Plaintiff—converts his actions into state action. (DE 179 at 17.) Plaintiff argues that under the compulsion, joint action, and public function tests used to determine whether a private individual may be liable under § 1983, Defendant Hernandez constitutes a state actor. (*Id.* at 17-18.)

"To state a claim under § 1983, a plaintiff must allege two elements: (1) the violation of a right secured by the Constitution and laws of the United States, and (2) the alleged deprivation was committed by a person acting under color of state law." *Williams v. Bronx Cty. Child Support Customer Serv. Unit*, 741 F. App'x 854, 855 (2d Cir. 2018). There are three tests used by courts to determine whether the conduct of a private entity may be attributed to the state, satisfying the state action requirement: (1) the compulsion test; (2) the joint action test; and (3) the public function test. *Berlin v. Jetblue Airways Corp.*, 436 F. Supp. 3d 550, 563 (E.D.N.Y. 2020) (citing *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008)).

The compulsion test considers whether the private entity acts pursuant to the "coercive power" of the state or is "controlled" by the state. *Id.* The joint action test, sometimes referred to as the close nexus test, is satisfied when the state provides "significant encouragement" to the entity, the entity is a "willful participant in joint activity with the [s]tate," or the entity's functions are "entwined" with state policies. *Id.* The public function test considers whether the entity "has been delegated a public function by the [s]tate." *Id.*

17

Both parties agree that generally, a private nurse is not a state actor under any of the above three tests.  (*See* DE 177 at 16-18; DE 179 at 17.)  However, based on the facts alleged here, this case falls into the less common group of cases in which a private hospital employee does undertake state action. Though decided in the context of summary judgment, Judge Karas' decision in *Falls v. (Police Officer) Detective Michael Pitt* (No. 16-CV-8863 (KMK), 2021 WL 1164185 (S.D.N.Y. Mar. 26, 2021) is instructive here.

In *Falls*, the plaintiff, who was suspected of selling narcotics, was arrested and brought to the police station where police officers conducted a strip search.  *Id.* at *3-4.  Plaintiff alleged that officers restrained him, conducted an invasive cavity search, and uncovered hidden drug contraband.  *Id.* at *4.  Police officers later took Plaintiff to a private hospital.  *Id.* at *5.  Plaintiff alleged that he "overheard [the officers] saying to someone out in the hallway" that they had a search warrant for a cavity search.  *Id*.  A nurse then came, said she was authorized to conduct a body cavity search, and proceeded to perform an anal cavity search while plaintiff was restrained by officers and further conducted an x-ray of plaintiff's stomach and abdomen.  *Id.* at *6.  In determining whether plaintiff could assert § 1983 against the staff of the private hospital, the court held:

> This case presents the less common scenario in which a private hospital employee did act as an instrumentality of the state. In performing the cavity search and x-ray, [the nurse] was helping the police locate and seize any illegal narcotics, and thus, she was primarily performing a law-enforcement function rather than a medical function. While there may also have been a compelling medical interest in identifying and removing any contraband secreted inside Plaintiff's body cavity, this interest was ancillary to the law-enforcement interest.

*Id.* at *50.  The court went on to recognize that it was unlikely that the search would have occurred without the search warrant and that by "searching Plaintiff's person at the compulsion of the police in order to locate and seize illegal narcotics, [the nurse] was perform[ing] a role traditionally within the exclusive prerogative of the state."  *Id.*

So too here, based on Plaintiff's allegations, Hernandez would not have performed a cavity search and x-ray on Plaintiff had it not been for the compulsion of the police officers to locate and seize contraband.

At the precinct, Plaintiff alleges that Defendants conducted a strip search of Plaintiff and, unsatisfied with what they found, told Plaintiff they were going to get a search warrant and take him to the hospital for the purpose of "see[ing] what's in [Plaintiff's] ass." (DE 158 at ¶¶ 23-25.) Plaintiff alleges that he was in fact brought to the hospital where he was restrained on a gurney by hospital employees, parole officers, and SCPD officers. (*Id.* at ¶ 30.) Plaintiff alleges that he emphatically informed Defendants and hospital staff that he refused any medical treatment. (*Id.* at ¶¶ 27, 30.) Next, Plaintiff overheard a discussion between Defendant Officers and Defendant Goodman which was followed by an order that Plaintiff be sedated. (*Id.* at ¶ 31.) Plaintiff alleges Defendant Hernandez hooked Plaintiff up to various machines, assisted Defendant Goodman in conducting a rectal exam, and arranged for Plaintiff's abdomen to be x-rayed. (*Id.* at ¶¶ 31-32.) According to Plaintiff, Defendant Hernandez otherwise did not provide other typical medical provider functions such as making efforts to determine whether Plaintiff had taken medications (legal or otherwise) or took a medical history. (*Id.* at ¶ 33.)

While Plaintiff does not allege that there was a search warrant authorizing the search, the SAC sufficiently alleges that but for the officer's encouraging to conduct a cavity search and x-ray, Defendant Hernandez did not otherwise have a medical basis to examine Plaintiff in that manner. Plaintiff sufficiently alleges that he was brought to the hospital by officers for the sole purpose of having his body searched. Based on these allegations, it cannot be said that Defendant Hernandez acted on his own independent medical judgment. This indicates that Defendant Hernandez was acting at the bidding of the police and therefore a state actor. *See*

*Tewksbury v. Dowling,* 169 F.Supp.2d 103, 109 (E.D.N.Y.2001) ("[I]f the decision to commit [plaintiff] was based purely on [defendant's] own independent medical judgment, [the] Defendants would be correct that they are not state actors. . . However, [plaintiff] was admitted to [the hospital] without any independent examination.")  In essence, as Plaintiff has alleged it, Defendant Hernandez's actions were only taken as an extension of the police.

Therefore, it is respectfully recommended that the Court find Defendant Hernandez's actions were fairly attributable to the state and thus his conduct does constitute state action.

### D. Failure to State a Claim

Defendant Hernandez contends that Plaintiff has failed to allege sufficient factual allegations as against Defendant Hernandez to state a claim for malicious prosecution, abuse of process, fabrication of evidence under section 1983 and the torts negligence and medical malpractice. (DE 177 at 18-22.)

In opposition, Plaintiff contends, generally, that Plaintiff has sufficiently satisfied the pleading requirements under Rule 8(a)(2) and that the Court should reject Defendant Hernandez's urging to apply some sort of heightened pleading standard.  (DE 179 at 23-25.)

### i. Malicious Prosecution

Defendant Hernandez argues that Plaintiff fails to allege that Defendant Hernandez initiated or continued criminal proceedings against Plaintiff and that he did so with actual malice. (DE 177 at 20.)

A section 1983 claim for malicious prosecution looks to the relevant state common law. *Gonzalez v. City of Schenectady,* 728 F.3d 149, 162 (2d Cir. 2013).  "The elements of a malicious prosecution claim under New York law are (1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the

proceeding could succeed, (3) that the defendant acted with malice, and (4) that the prosecution

was terminated in the plaintiff's favor." *Rohman v. New York City Transit Auth. (NYCTA)*, 215

F.3d 208, 215 (2d Cir. 2000).

"In order for a civilian defendant to be considered to have initiated the criminal

proceeding, it must be shown that defendant played an active role in the prosecution, such as

giving advice and encouragement or importuning the authorities to act." *Udechukwu v. City of

New York*, 333 F. Supp. 3d 161, 170 (E.D.N.Y. 2018) (quotations omitted).

Here, Plaintiff fails to allege that Defendant Hernandez played such an active role.

Plaintiff alleges that Defendant Hernandez hooked Plaintiff up to various machines, assisted with

conducting a rectal exam, arranged for Plaintiff's abdomen to be x-rayed, and failed to intervene

as Plaintiff was sedated.  (DE 158 at ¶¶ 31-33.)  Plaintiff does not allege that Defendant

Hernandez played any role in the subsequent prosecution against him for Assault in the Second

Degree (for allegedly kicking Defendant Lugo in the thumb while exiting a vehicle) or

Obstruction of Governmental Administration (for Plaintiff's alleged resistance to the cavity

search).  For this reason, it is respectfully recommended that the Court find that Plaintiff fails to

state a claim for malicious prosecution against Defendant Hernandez.

### ii. Abuse of Process

Defendant Hernandez argues that Plaintiff fails to allege any facts which support a claim

for abuse of process.  (DE 177 at 21.)

An "abuse-of-process claim lies against a defendant who (1) employs regularly issued

legal process to compel performance or forbearance of some act (2) with the intent to do harm

without excuse of justification and (3) in order to obtain a collateral objective that is outside the

legitimate ends of the process." *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 615

(E.D.N.Y. 2017).  "The torts of malicious prosecution and abuse of process are closely allied." *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994).  Malicious prosecution deals with the improper issuance of process, whereas abuse of process concerns the improper use of process after it is regularly issued.  *Id.*

The "process" identified in the SAC is the initiation of the proceedings against Plaintiff for Assault in the Second Degree and Obstruction of Governmental Administration.  (*See* DE 158 at ¶ 69.)  Plaintiff alleges that such criminal process was fueled solely by Defendants' "malicious desire to humiliate Plaintiff" for challenging their alleged abuse of him.  (*Id.* at ¶ 70.) However, "it is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him by pursuing his arrest and prosecution."  *Savino v. City of New York*, 331 F.3d 63, 77 (2d Cir. 2003).  "Instead, he must claim that they aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution."  *Id.*

Here, Plaintiff fails to allege that Defendants had any collateral purpose beyond pursuing, and prevailing in, plaintiffs' criminal prosecution.  Furthermore, as stated above, Plaintiff does not sufficiently allege that Defendant Hernandez partook in the initiation of the criminal proceedings.  Plaintiff merely alleges, in a conclusory fashion, that Defendant Hernandez "acted jointly with SDCP and DOCCS Defendants."  (DE 158 at ¶ 71.)  This is insufficient to state a claim for abuse of process.  Therefore, it is respectfully recommended that the Court find that Plaintiff fails to state a claim for abuse of process against Defendant Hernandez.

### iii.    Fabrication of Evidence

To state a claim for fabrication of evidence, a plaintiff must allege that an "(1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty,

or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016). The majority of § 1983 cases asserting fabrication of evidence "arise from allegations that a police officer fabricated evidence and forwarded it to prosecutors in order to provide probable cause for an arrest or prosecution." *Morse v. Spitzer*, No. 07-CV-4793 CBA RML, 2012 WL 3202963, at *6 (E.D.N.Y. Aug. 3, 2012).

Defendant Hernandez argues that Plaintiff fails to meet each and every one of the above listed elements. (DE 177 at 21.) Further, while Plaintiff alleges that Defendant Hernandez falsified medical records, Plaintiff fails to adequately allege how the records were falsified, what information was falsified, and/or what information was omitted. (*Id.* at 21-22.)

Here, Plaintiff alleges that the SCDP and DOCCS Defendants created false reports to justify the unlawful cavity search and filed false reports claiming Plaintiff assaulted Defendant Lugo. (DE 158 at ¶ 74.) Plaintiff maintains that Defendants did so to support parole and criminal charges against Plaintiff. (*Id.*) Plaintiff alleges Defendant Hernandez's role in this scheme was by falsifying Plaintiff's medical records to protect themselves from recourse resulting from the unlawful cavity search. (*Id.* at ¶ 75.) Plaintiff alleges Defendant Hernandez worked jointly with SCPD and DOCCS. (*Id.* at ¶ 76.)

Plaintiff's claim for fabrication of evidence fails because Defendant Hernandez is not an investigating official. Even so, to the extent Plaintiff alleges Defendant Hernandez falsified his medical records, Plaintiff does not allege that this information was ever provided to a prosecutor to influence the jury in any case against Plaintiff. *See Davenport v. City of New York*, No. 15-CV-5890 (MKB), 2017 WL 4356883, at *18 (E.D.N.Y. Sept. 28, 2017) ("Nevertheless, Plaintiff's claims fail because he does not present any evidence that Detective Sager forwarded incomplete evidence to the District Attorney's Office.") For this reason, it is respectfully

recommended that the Court find that Plaintiff fails to state a claim for fabrication of evidence against Defendant Hernandez.

### iv. Negligence

Defendant Hernandez seeks to dismiss Plaintiff's claim for negligence because according to Defendant Hernandez, both Plaintiff's claims for negligence and medical malpractice each sound in medical malpractice. (DE 177 at 22.) Defendant Hernandez argues that because the negligence claim is not separate and distinct from the medical malpractice claim, it should be dismissed.

"Under New York law, an action to recover for personal injuries against a hospital may sound in either 'simple negligence' or medical malpractice." *Tomaselli v. Zimmer, Inc.*, No. 14-CV-04474 (RA), 2015 WL 13888410, at *2 (S.D.N.Y. Mar. 23, 2015). There is no prohibition against pleading both. *Jones v. Beth Israel Hosp.*, No. 1:17-CV-3445-GHW, 2018 WL 1779344, at *9 (S.D.N.Y. Apr. 12, 2018) ("It is simply beyond cavil that an action for personal injuries may be maintained, in the proper case, on the dual theories of medical malpractice or simple negligence where a person is under the care and control of a medical practitioner or a medical facility") (quotations omitted).

Medical practice is "conduct that constitutes medical treatment or bears a substantial relationship to the rendition of medical treatment by a licensed physician." *Id.* Negligence is "conduct such as a claim that a hospital failed to provide a patient with competent and qualified nurses or failed to promulgate rules requiring doctors to take adequate medical histories from patients sounds in negligence." *Id.* "'When the duty arises from the physician-patient relationship or is substantially related to medical treatment, the breach gives rise to an action sounding in medical malpractice, not simple negligence.'" *La Russo v. St. George's Univ. Sch.*

24

*of Med.*, 747 F.3d 90, 101 (2d Cir. 2014) (quoting *Stanley v. Lebetkin*, 123 A.D.2d 854, 854, 507 N.Y.S.2d 468, 468 (1986)).

Here, Plaintiff fails to allege that Defendant Hernandez acted negligently apart from his role in Plaintiff's restraint, sedation, and unlawful search of his cavity—the same conduct underlying his claim for medical malpractice.  (DE 158 at ¶¶ 105-120.)  Plaintiff's allegations of sedation and bodily searches bear a substantial relationship to the rendition of medical treatment.  *See Jones*, 2018 WL 1779344 at *9.  Therefore, it is respectfully recommended that the Court find that Plaintiff's claim for simple negligence must be dismissed.

### E.  Court's Prior Grant for Leave to Amend

Perhaps anticipating Plaintiff's counter argument, Defendant Hernandez argues that although the Court in its December 17, 2021 Order permitted Plaintiff to amend his complaint, the Court did not affirmatively grant Plaintiff permission to add Defendant Hernandez to the caption.  (DE 177 at 23.)  Defendant Hernandez argues Plaintiff's SAC should be dismissed on this ground.

In opposition, Defendant Hernandez argues that the Court granted Plaintiff's motion to amend, which included the addition of Defendant Hernandez, and only denied the portion of which sought to add Defendant Provenzano.  (DE 179 at 25.)

Plaintiff explicitly sought leave to amend his complaint for a second time to "more succinctly identify the causes of action, requested relief, and facts of" the case and to properly add Defendant Hernandez and Defendant Provenzano as named Defendants."  (DE 140.)[3]  The Court unequivocally held that "Plaintiff's motion for leave to file a second amended complaint is

---

[3] Plaintiff also sought ruling that his proposed amendments, including the addition of Defendant Hernandez, relate back to July 25, 2018, the date Plaintiff filed the initial complaint.  (*Id.*) The Court declined to issue an advisory opinion on the issue.  (*Id.* at n.1.)

granted, with the exception that it is denied to the extent that it seeks to add Defendant

Provenzano." (*Id.* at 10.) In so granting, Plaintiff was permitted to amend his pleadings to add

Defendant Hernandez.

### F. Plaintiff's Ability to Further Amend his Claims

Although it is usual practice to grant a plaintiff leave to replead his claims when granting

a motion to dismiss (*Cruz v. TD Bank, N.A.*, 742 F.3d 520, 523 (2d Cir. 2013)), doing so here

would be futile because Plaintiff's section 1983 claim is time-barred. Further pleading would

not cure this deficiency. *See Kotler v. Charming Shoppes Inc.*, No. 11 CIV. 3296 SAS, 2012 WL

291512, at *3 (S.D.N.Y. Jan. 31, 2012) ("Here, leave to replead would be futile because

[plaintiff's] claims are time barred and an amended complaint would be unable to cure that

deficiency").

Furthermore, Plaintiff – who is represented and not *pro se* -- has already been afforded

two opportunities to amend his pleadings and there does not seem to be any further facts or legal

theories Plaintiff could assert if given leave to amend. *See City of Pontiac Policemen's &*

*Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 188 (2d Cir. 2014) (holding the district court did

not err in denying leave to replead where plaintiffs already had one opportunity to amend their

complaint and had "identified no additional facts or legal theories—either on appeal or to the

District Court—they might assert if given leave to amend"); *Perry v. Sony Music*, 462 F. Supp.

2d 518, 520 (S.D.N.Y. 2006) ("Because [Plaintiff] was already afforded an opportunity to cure

the deficiencies of his initial complaint and failed to do so in the amended complaint, the Court

deems it appropriate not to grant any further leave to replead").

Accordingly, it is respectfully recommended that Plaintiff's SAC be dismissed as to

Defendant Hernandez without leave to replead.

## IV.   **CONCLUSION**

Based on the foregoing, the undersigned respectfully recommends Defendant Hernandez's motion for an order dismissing Plaintiff's Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) be granted, without leave to replead.

### **OBJECTIONS**

A copy of this Report and Recommendation is being electronically served on counsel. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision") (citation omitted); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated:  Central Islip, New York
      February 6, 2023

RESPECTFULLY RECOMMENDED,

/s/ *James M. Wicks*
      JAMES M. WICKS
      United States Magistrate Judge