UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------X
JAMIE E. YOUNG,

               Plaintiff,                     <u>ORDER</u>
                                           18-CV-4216(JS)(JMW)

    -against-

MARK LUGO, et al.

               Defendants.
------------------------------------------------X


APPEARANCES

For Plaintiff
Jamie Young:       Frederick K. Brewington, Esq.
                Law Offices of Frederick K. Brewington
                556 Peninsula Boulevard
                Hempstead, New York 11550

For Defendants
Mark Lugo and
Alonzo Payton:     Valerie Singleton, Esq.
                Assistant Attorney General
                State of New York
                200 Old Country Road, Suite 240
                Mineola, New York 11501


SEYBERT, District Judge:

        Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, Defendants Mark Lugo ("Lugo") and Alonzo Payton ("Payton", together with Lugo, the "R&R Defendants") object to the portion of Magistrate Judge James M. Wicks's February 6, 2026 Report and Recommendation ("R&R", ECF No. 244) recommending denial of summary judgment on the unreasonable seizure/excessive force

1

and assault and battery claims brought by Plaintiff Jamie Young ("Plaintiff", together with the R&R Defendants, the "Parties"). (See Obj., ECF No. 248; Supp. Obj., ECF No. 251; Reply, ECF No. 253; Motion, ECF No. 234.) Plaintiff's causes of action relate to events that took place while Plaintiff was in law enforcement custody on December 14, 2017.  Because this Court concludes no dispute of material fact precludes application of the qualified immunity defense, the R&R Defendants' Objection is SUSTAINED and their Motion is GRANTED, as set forth below.

## BACKGROUND

### I.   Undisputed Facts

The Court draws all undisputed facts from the Rule 56.1 materials submitted by the Parties.  (See Pl.'s 56.1 Response, ECF No. 236-1, attached to Opp'n; Defs.' 56.1 Response, ECF No. 235-2, attached to Defs.' Reply.) Unless otherwise noted, all facts are undisputed.

On December 14, 2017, Plaintiff was arrested for allegedly violating his parole by fraternizing with Shati Roy ("Roy"), a known parolee.  (Pl.'s 56.1 Response ¶¶ 15, 19.) Both Plaintiff and Roy were additionally suspected of being involved with a prostitution ring.  (Id.) New York State Department of Correction and Community Supervision ("DOCCS") Officer Lugo effectuated Plaintiff's arrest.  (Id. ¶ 19.) The Parties dispute

2

whether Roy was found in possession of crack cocaine on his person and in his vehicle. (Id. ¶ 17.) Plaintiff's term of parole stemmed from several drug-related convictions and a weapons conviction from 1996. (Id. ¶ 12.) Plaintiff has a history of cocaine abuse and has spent time in drug rehabilitation, which is reflected in his medical records. (Id. ¶ 14.)

After Plaintiff was arrested and taken into custody, Lugo and DOCCS Officer and Defendant Orrison McLean drove Plaintiff to the Suffolk County Police Department's Fifth Precinct ("Fifth Precinct"). (Id. ¶ 20.) The Parties dispute several aspects of Plaintiff's conduct in the vehicle at the Fifth Precinct parking lot. Lugo testified that Plaintiff: was "acting suspiciously"; was "fidgeting in his pants quite feverishly"; and repeatedly placed his hands down the back of his pants. (Id. ¶ 21.) Plaintiff denies engaging in this conduct, but acknowledged in his deposition that he "shift[ed] his position" while at the Fifth Precinct to relieve rectal discomfort. (Id.; Pl.'s Tr., ECF No. 237-5, 183:06-11, attached to Decl., ECF No. 237.)

Believing Plaintiff may have rectally-stored drugs, Lugo and Suffolk County Detective and Defendant Alberto Acevedo ("Acevedo") went with Plaintiff to a holding cell. (Id. ¶¶ 23-24.) Plaintiff was subsequently advised he would have to remove his clothes so police could search his body for drugs. (Id. ¶ 24.)

3

Plaintiff complied.  (Id.) As part of his parole, Plaintiff had consented to searches of his person or property.  (Id. ¶ 13.)

During the search, Lugo observed something resembling a bubble protruding from Plaintiff's rectum.  (Id. ¶ 26; Defs.' 56.1 Response ¶ 7.) Lugo believed the "bubble" was a bag of drugs, testifying it appeared to have three balloon knots. (Pl.'s 56.1 Response ¶ 26.) But Plaintiff testified that, after officers laughed and referred to what they observed as a "bubble", he informed them the "bubble" was actually a hemorrhoid.[1] (Defs.' 56.1 Response ¶¶ 10-11.) Defendants dispute that Plaintiff disclosed his hemorrhoid condition; Lugo contends instead Plaintiff stated, "if you want to know what's in my ass, take me to the hospital." (Id. ¶¶ 10-11.) Plaintiff denies making that statement or ever requesting to be taken to a hospital. (Pl.'s 56.1 Response ¶ 26.) After Plaintiff was told to get dressed, he indicated he was willing to provide officers a second look at his rectum and thereafter requested an attorney.  (Defs.' 56.1 Response ¶¶ 12, 15.) Acevedo advised Plaintiff that a warrant would be obtained to

---

[1] Although Plaintiff asserts Defendants did not subjectively believe Plaintiff had a bag of drugs in his rectum (see Pl.'s 56.1 Response ¶ 26), he cites to no record support for the proposition. Plaintiff's bald assertion is insufficient to create a disputed fact.  See Jeffreys v. City of N.Y., 426 F.3d 549, 554 (2d Cir. 2005) ("a nonmoving party 'must offer some hard evidence showing that its version of the events is not wholly fanciful'") (quoting D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir. 1998)).

4

determine whether anything was present in Plaintiff's rectum, although no such warrant was ever issued.  (Id. ¶¶ 9, 13.)

Following the search, and at the direction of his supervisor, Lugo transported Plaintiff to Brookhaven Memorial Hospital Medical Center ("Brookhaven Hospital" or "Hospital"), accompanied by DOCCS Investigator Payton.  (Pl.'s 56.1 Response ¶ 27.)  In the transport vehicle, Plaintiff was handcuffed, secured with a waist chain, and shackled at the feet. (Id. ¶ 28.) The Parties dispute whether, on his way to the Hospital, Plaintiff repeatedly banged his head against the window. (Id.) Upon arrival at Brookhaven Hospital, Plaintiff exhibited several instances of erratic and non-compliant behavior, including: refusing to exit the vehicle; curling into the fetal position on the floor of the vehicle; and locking his legs to prevent law enforcement from removing him from the vehicle.  (Id. ¶ 29.) Plaintiff states he was ultimately removed from the vehicle when the R&R Defendants pulled on his handcuffs and leg shackles, before "plac[ing]" him in a wheelchair (the "Vehicle Extraction"). (Id. ¶¶ 29-30; Defs.' 56.1 Response ¶ 23.)  The R&R Defendants contend Plaintiff kicked and flailed his legs during the Vehicle Extraction, striking Lugo and causing injuries to Lugo's wrist and thumb.  (Pl.'s 56.1 Response ¶ 29.) Plaintiff denies kicking, flailing, or injuring Lugo.  (Id.) The Parties further dispute

whether Plaintiff attempted to spit on or bite Lugo as he was brought into the Hospital. (Id. ¶ 30.) Although Plaintiff disputes he injured Lugo or kicked him, it is undisputed Lugo broke his wrist and thumb at some point on December 14.  (Id. ¶¶ 36-37.)

Once inside the Hospital, Plaintiff continued yelling that he did not want to be there, at times "at the top of his lungs." (Id. ¶¶ 30-31.) Plaintiff was subsequently examined by Dr. Carl Goodman ("Dr. Goodman" or "Doctor"), an attending emergency physician at Brookhaven Hospital, who described Plaintiff as "extremely agitated and belligerent" with some more calm periods throughout the night.  (Pl.'s 56.1 Response ¶¶ 32-33; Defs.' 56.1 Response ¶ 33.) One of several law enforcement officers present with Plaintiff informed Dr. Goodman they believed Plaintiff may have put a foreign body in his rectum, and that they had observed something protruding from Plaintiff's rectal area.  (Pl.'s 56.1 Response ¶ 33.) They requested Plaintiff be "checked out" by medical staff.  (Defs.' 56.1 Response ¶ 26.) Law enforcement supplied the information underlying Dr. Goodman's belief that Plaintiff may have had a foreign object in his rectum; the Parties dispute whether the Doctor's subsequent actions were the product of independent medical judgment or law enforcement influence. (Pl.'s 56.1 Response ¶ 33.)

After consulting with law enforcement personnel, Dr. Goodman sedated Plaintiff with a ketamine injection. (Pl.'s 56.1 Response ¶ 34.) Dr. Goodman testified he sedated Plaintiff to physically examine him for a suspected foreign body, amid Plaintiff's persistent non-compliance and erratic behavior. (Defs.' 56.1 Response ¶ 42.) The Parties dispute whether law enforcement officers helped restrain Plaintiff during the ketamine injection. (Id.) Plaintiff contends Lugo and Payton held him down during the injection, testifying "[p]olice basically tugg[ed] on the shackles because I was trying to avoid from being sedated, but they overpowered me" and with one officer holding his weight to Plaintiff's body (hereinafter, the "Alleged Ketamine Restraint" or the "Alleged Restraint"). (Pl.'s Tr. 61:19-62:20.) Lugo and Dr. Goodman each testified they do not recall law enforcement restraining Plaintiff prior to injection. (Defs.' 56.1 Response ¶ 42.) While Plaintiff was sedated, his abdomen and pelvis were x-rayed and Dr. Goodman performed a manual rectal examination.[2] (Pl.'s 56.1 Response ¶ 34.) The examination revealed hemorrhoids but no foreign body. (Id. ¶ 35.)

At approximately 11:15, Plaintiff was formally arrested and charged with Assault in the Second Degree, based upon

---

[2] Although Plaintiff contends law enforcement requested he be sedated, the record contains no evidence that any officer specifically requested sedation. (Defs.' 56.1 Response ¶ 31.)

7

allegations he injured Lugo's thumb, and Obstructing Governmental Administration in the Second Degree.  (Pl.'s 56.1 Response ¶ 37.) Plaintiff was transported back to the Fifth Precinct and later to Yaphank Correctional Facility.  (Id. ¶ 38.) Plaintiff ultimately pleaded guilty to a parole revocation charge and to promoting prostitution.  (Id. ¶ 41.) Plaintiff maintains the assault charge was brought maliciously, citing the fact he did not plead guilty to the offense.  (Id. ¶ 4.)

In the days following the examination, Plaintiff experienced swollen and reddened wrists and ankles from the restraints and pain in his rectal area, which he treated with Tylenol.  (Id. ¶ 42; Defs.' 56.1 Response ¶ 23.) Plaintiff contends the swollen and reddened wrists and ankles stem from the R&R Defendants pulling on his chains, and the rectal pain stemmed from Dr. Goodman's examination.  (Defs.' 56.1 Response ¶ 23.)  He did not seek follow-up medical treatment. (Pl.'s 56.1 Response ¶ 42.) Plaintiff also claims ongoing emotional distress, embarrassment, diminished self-esteem, and mental trauma resulting from the events of that night. (Id.)

## II.  Relevant Procedural Background

### A.  Commencement of Action and Substantive Claims Against Law Enforcement Defendants

On January 25, 2018, Plaintiff commenced this action pro se. (See Compl., ECF No. 1.) On December 27, 2021, after retaining

8

counsel, Plaintiff filed the operative Second Amended Complaint against: the R&R Defendants; DOCCS Officers Orrison McLean, Joseph Rehal, Ross Botwinick, and Catherine Mencarelli; Suffolk County Police Officers Alberto Acevedo, Matthew Spilatros, and four John Doe Suffolk Police Officers (collectively with the aforementioned Defendants, the "Law Enforcement Defendants"); Dr. Goodman, and Nurse Henry Hernandez (collectively with the Law Enforcement Defendants and Dr. Goodman, the "Defendants").  ("SAC," ECF No. 151.) The SAC generally alleges Defendants: subjected Plaintiff to an unlawful warrantless body cavity search; used excessive force to compel his submission to the search; fabricated criminal charges against Plaintiff in retaliation; and falsified records to conceal their conduct.  (See generally SAC.) Pertinent to this decision, the SAC alleges the Law Enforcement Defendants violated Plaintiff's Fourth and Fourteenth Amendment rights by using unjustified physical force to remove him from a patrol vehicle and transport him into the Hospital, by restraining him before he was sedated, and sedating him to compel submission to a body cavity search (the "Excessive Force Claim").  (Id. ¶¶ 52-59.) Such behavior, per the SAC, also amounts to assault and battery under New York State law (the "Assault and Battery Claim"). (Id. ¶¶ 92-98.) The SAC also asserts claims against the Law Enforcement Defendants for: unreasonable search/invasion of privacy; malicious prosecution; abuse of process; fabrication of evidence; cruel and

unusual punishment; and violations of Plaintiff's substantive due process right to bodily autonomy.  (See generally id.)

B.  Law Enforcement Defendants' Motion and Plaintiff's Opposition

On March 19, 2024, the Law Enforcement Defendants served their Motion for Summary Judgment.  (See generally Support Memo, ECF No. 234-1, attached to Motion.) At a high level, the Law Enforcement Defendants maintain none of their actions violated Plaintiff's constitutional rights, while additionally emphasizing Plaintiff's diminished expectation of privacy as a parolee.  (See id. at 6-22.) In the alternative, the Law Enforcement Defendants contend they are entitled to qualified immunity because no precedent clearly established a parolee's right to be free from the type of body cavity search at issue.  (Id. at 25-26.) The Law Enforcement Defendants further assert qualified immunity is applicable because: (1) they had an arguable reasonable basis to believe Plaintiff was concealing drugs in his rectum; and (2) they acted objectively reasonable under the circumstances.  (Id. at 26.)

On September 12, 2024, Plaintiff served his Opposition. (See generally Opp'n, ECF No. 236.) The Opposition maintains, first, the searches at issue were unlawful, and, second, several issues of material fact preclude summary judgment.  Id.  For example, Plaintiff disputes whether, prior to visiting the

10

Hospital: certain witnesses actually observed the events they described; Plaintiff was fidgeting or reached into his pants in the vehicle; whether the warrantless rectal search complied with County policy; and whether Plaintiff possessed contraband in his rectum.  (Opp'n. at 2-8; 10-11.) As to the events at the Hospital, Plaintiff contends the parole officers "served as the driving force to have Dr. Goodman perform the unconsented to and opposed injection of ketamine as a sedative, performed the unconsented and opposed by Plaintiff anal probe and other medical tests upon Plaintiff without a warrant." (Id. at 15.)  On qualified immunity, Plaintiff argues the Law Enforcement Defendants are not protected because the constitutional prohibition on warrantless, invasive body cavity searches was clearly established at the time, and the searches here fell short of the required legal threshold.  (Id. at 24-25.)

   C.    Judge Wicks's R&R

       On February 6, 2026, Judge Wicks issued the R&R.  (See R&R.) The R&R recommended dismissal of all claims except the Excessive Force and Assault and Battery Claims against the R&R Defendants, on grounds disputes of material fact surrounded the Vehicle Extraction and Alleged Ketamine Restraint, therefore the

11

R&R Defendants were not entitled to qualified immunity.[3]  (Id. at 17-21.)  With respect to the Vehicle Extraction, Judge Wicks observed the Parties disputed whether Plaintiff kicked and flailed which, in Judge Wicks's view, called into question how much force was justified to extract Plaintiff.  (Id. at 18-19.)  On the Alleged Ketamine Restraint, Judge Wicks found the dispute over whether, first, the R&R Defendants were involved at all and, second, "whether the level of force necessary to assist Goodman in sedating Plaintiff was reasonable under the circumstances" precluded summary judgment.  (Id.)  Judge Wicks likewise recommended denying summary judgment as to the Assault and Battery Claim, since it arose from the same facts as the Excessive Force Claim.  (Id. at 37-38.)

These factual disputes foreclosed qualified immunity, Judge Wicks also reasoned, because they prevented any determination that Defendants' conduct was reasonable as a matter of law.  (Id. at 19-21.)  In addressing whether Plaintiff's rights were clearly established, Judge Wicks briefly quoted Frederique v. County of Nassau for the proposition that "'it is axiomatic that the right that plaintiff asserts—namely plaintiff's right under

---

[3] Judge Wicks recommended summary judgment be granted on all claims against McLean, Mencarelli, Rahal, and Botwinick, on grounds these defendants were not alleged to be personally involved in the alleged violations and torts.  (Id. at 11-13.)  The R&R did not address the involvement of Acevedo, Spilatros, or John Does 1-4. (Id.)

12

the Fourth Amendment to be free from excessive force—is clearly established.'" (Id. at 20 (citing 168 F. Supp. 3d 455, 479 (E.D.N.Y. 2016) (quoting Hodge v. Village of Southampton, 838 F. Supp. 2d 67, 86 (E.D.N.Y. 2012)).) Because the federal Excessive Force claim survived, Judge Wicks suggested exercising supplemental jurisdiction over the Assault and Battery Claim, because it related to the same conduct as the Excessive Force Claim. (Id. at 30-31.)

D.    Defendants' Objections and Plaintiff's Response

On March 21, 2026, a few hours after the Court-imposed March 20 deadline, the R&R Defendants untimely filed their Objection.[4] (See generally Obj.) On April 7, 2026, at this Court's direction, the R&R Defendants submitted a Supplemental Objection addressing the applicability of the Supreme Court's decision in Zorn v. Linton, as the Supreme Court's issuance of Zorn came after Judge Wicks issued the R&R. (See generally Supp. Obj. (citing Zorn, 146 S. Ct. 926 (2026)).)

In their Objection, the R&R Defendants argue they are entitled to qualified immunity because the force they employed was objectively reasonable under the totality of the circumstances.

---

[4] On March 23, 2026, the R&R Defendants filed an untimely, "corrected" Objection. (See Second Obj., ECF No. 249.) For the reasons discussed infra, this Court will not consider the arguments raised in the "corrected" objection.

(Obj. at 2-4.) In support, they emphasize: Plaintiff's parolee status; drug-related criminal history; arrest while associating with a parole absconder; Lugo's observation of a "bubble" in Plaintiff's rectum; and Plaintiff's resistance. (Id. at 2-7.) The Supplemental Objection further contends Zorn reinforces their position, as no prior precedent clearly established the force used here as unlawful. (Supp. Obj. at 2.)

On May 1, 2026, Plaintiff filed his Reply, maintaining Judge Wicks was correct on qualified immunity. (See generally Reply.) Plaintiff continues to maintain the R&R Defendants used unreasonable force in violation of his constitutional rights, and that existing precedent clearly establishes such conduct as illegal. (Id.)

DISCUSSION

I.   Applicable Law, Generally

A.   Reports and Recommendations

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); see also FED R. CIV. P. 72(b)(3). A party objecting to an R&R "must lodge a specific objection to some specific aspect of the R&R," and "[w]hen a timely filed objection raises and properly briefs arguments previously rejected by the magistrate judge, the district judge must review those

14

arguments de novo." Nambiar v. Cent. Orthopedic Grp., LLP, 158 F.4th 349, 361 (2d Cir. 2025). The Court need not review the findings and conclusions to which no proper objection has been made, and an objection "may not simply rest on the briefs considered by the magistrate judge." Id.; Thomas v. Arn, 474 U.S. 140, 150 (1985).

B.    Summary Judgment

The Court shall grant summary judgment under Rule 56(a) when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is material for the purposes of resolving a summary judgment motion "when it might affect the outcome of the suit under the governing law." Adamson v. Miller, 808 F. App'x 14, 16 (2d Cir. 2020). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. (quoting Jeffreys v. City of N.Y., 426 F.3d. 549, 553 (2d Cir. 2005)).

"The movant bears the burden of 'demonstrat[ing] the absence of a genuine issue of material fact.'" Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 114 (2d Cir. 2017) (quoiting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The burden of persuasion may be satisfied by either: "(1) [ ] submitting evidence that negates an essential element of the non-

15

moving party's claim; or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim." Id. (further citation omitted). Once the moving party has met its burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts" and instead must offer "some hard evidence showing that its version of the events is not wholly fanciful." Stein v. County of Nassau, 417 F. Supp. 3d 191, 197 (E.D.N.Y. 2019) (citations omitted).

"Summary judgment is inappropriate when the admissible materials in the record make it arguable that the claim has merit." Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010) (citations and quotation marks omitted). In reviewing the record, the Court "may not make credibility determinations or weigh the evidence" as such determinations are to be made by the jury, not the judge. Id. (citing Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 150 (2000)). Accordingly, where an issue as to a material fact cannot be resolved without weighing the credibility of a witness, summary judgment is improper. Id.

C.    Which Objections This Court Will Consider

On February 12, 2026, this Court instructed the Parties to file any objections to the R&R by March 20, 2026. (See Feb. 12, 2026 Order.) On March 21, 2026, the R&R Defendants filed their

Objection, shortly after midnight.  (Obj.) On March 23, 2026, without explanation or leave of Court, the R&R Defendants filed a "Corrected Memorandum of Law in Support of State Defendants' Objections to the Report and Recommendation." (Supp. Obj.) Because "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules," and because the Objection was filed shortly after the relevant deadline, the Court will consider the arguments made in the Objection notwithstanding the noncompliance with the Court's deadline.  Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001), abrogated in part on other grounds, Gross v. FBL Fin. Servs., Inc., 557 U.S. 167 (2009).  However, because the Second Objection was submitted several days past the deadline and without any explanation or leave, in its broad discretion, the Court will not consider any arguments raised therein.

## II. Qualified Immunity

### A. Applicable Law

Qualified immunity shields state actors "performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Where applicable, qualified immunity offers "ample protection to

17

all but the plainly incompetent or those who knowingly violate the law." Sacaza v. City of N.Y., 169 F.4th 363, 369 (2d Cir. 2026) (quoting Dufort v. City of N.Y., 874 F.3d 338, 354 (2d Cir. 2017)). "The issues on qualified immunity are: (1) whether plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was 'clearly established'; and (3) even if the right was 'clearly established', whether it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful." Monroe v. Gould, 372 F. Supp. 3d 197, 204 (S.D.N.Y. 2019) (quoting Gonzalez v. City of Schenectady, 728 F.3d 149, 154 (2d Cir. 2013)). "Courts may use their discretion in deciding the order in which to approach a qualified immunity analysis." Sacaza, 169 F.4th at 370 (citing Coollick v. Hughes, 699 F.3d 211, 219-20 (2d Cir. 2012)).

"[C]ourts have observed that the distinction between the defense of qualified immunity and the substantive law of an excessive force claim has become blurred." Frederique, 168 F. Supp. 3d at 479 (citing Landy v. Irizarry, 884 F. Supp. 788, 800 (S.D.N.Y. 1995)). To determine whether force was excessive, courts must assess "the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."

18

Figueroa v. Mazza, 825 F.3d 89, 105 (2d Cir. 2016) (citing Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 251-52 (2d Cir. 2001)). "The evaluation of a police officer's use of force must be from the perspective of a reasonable police officer at the incident, not from hindsight." Cruz v. City of N.Y., 232 F. Supp. 3d 438, 451 (S.D.N.Y. 2017) (citing Graham v. Connor, 490 U.S. 386, 396 (1989)).

"To be entitled to qualified immunity at the summary judgment stage of a case, a defendant must show that, even viewing the evidence in the light most favorable to the plaintiff, the defendant's actions did not violate clearly established law." Falls v. Pitt, No. 16-CV-8863, 2021 WL 1164185, at *28 (S.D.N.Y. Mar. 26, 2021) (citation omitted). A right is clearly established only when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Rivas-Villegas v. Cortesluna, 595 U.S. 1, 5 (2021) (quoting Mullenix v. Luna, 577 U.S. 7, 11 (2015)). To find a right is clearly established, courts ordinarily "need to identify a case where an officer acting under similar circumstances was held to have violated" the Constitution. Escondido v. Emmons, 586 U.S. 38, 43 (2019) (further citation omitted); see also Zorn, 146 S. Ct. at 930 ("[a] right is not clearly established if existing precedent does not place the constitutional question 'beyond debate'") (citing Rivas-Villegas, 595 U.S. at 5). "The relevant

19

precedent must define the right with a 'high degree of specificity,' so that 'every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply.'" Zorn, 146 S. Ct. at 930 (citing District of Columbia v. Wesby, 583 U.S. 48, 63 (2018)). "Principles stated generally, such as that 'an officer may not use unreasonable and excessive force,' do not suffice." Id. (citing Kisela v. Hughes, 584 U.S. 100, 105 (2021)). Those acting under color of state law will receive qualified immunity "unless they could have 'read' the relevant precedent beforehand and 'know[n]' that it proscribed their specific conduct." Id. (citing City and County of San Francisco v. Sheehan, 575 U.S. 600, 616 (2015)).

    B.   Application

        1.   The Undisputed Facts

        In recommending denial of summary judgment, Judge Wicks identified three primary factual disputes: whether Plaintiff kicked, spat at, or attempted to bite Lugo during and after the Vehicle Extraction; whether the R&R Defendants participated in the Alleged Ketamine Restraint; and the extent to which these disputes bore on the Excessive Force Claim. (Id. at 19–21.) Even taking Plaintiff's version of the facts as true—and reviewing them in light of the relevant precedents—this Court is convinced the R&R Defendants acted reasonably and did not violate any clearly

20

established right.  See Bolmer v. Oliveira, 594 F.3d 134, 141 (2d Cir. 2010) (courts may determine entitlement to qualified immunity "on stipulated facts, or on the facts that the plaintiff alleges are true, or on the facts favorable to the plaintiff that the trial judge concluded the jury might find") (quoting Salim v. Proulx, 93 F.3d 86, 90 (2d Cir. 1996)).

Prior to the Vehicle Extraction, it is undisputed Plaintiff: had a long history of drug-related issues; was arrested for associating with another parolee; "shifted" in a way that Lugo believed could indicate rectal contraband; and had something protruding from his rectum.  (See supra pp. 3-4.) This set of facts provided the R&R Defendants with a reasonable basis to believe Plaintiff had drugs in his rectum, and they responded to the perceived exigency of the same by taking him to the Hospital.[5] (Id. at 5.) Once at the Hospital, there is no dispute Plaintiff: (1) resisted removal by positioning himself on the floor of the vehicle in the fetal position and locking his legs; and (2) had to

---

[5] In recommending a grant of summary judgment on Plaintiff's unreasonable search/violation of privacy claim—which Plaintiff did not challenge—Judge Wicks persuasively explained "the officers had 'reason to believe, based on specific and articulable facts, taken together with rational inferences from those facts, that [Plaintiff was] secreting contraband inside a body cavity,' and were thus 'permitted to conduct [the] visual body cavity search.'" (R&R at 16-17 (quoting Sepulveda v. City of N.Y., No. 15-CV-5187, 2020 WL 2836952, at *6 (E.D.N.Y. May 29, 2020)).)

be forcibly removed from the vehicle, including via law enforcement pulling on his chains.  (Id. at 5-6.)

Even assuming the R&R Defendants did participate in the Alleged Ketamine Restraint, Plaintiff merely states he was "overpowered" when one officer pressed his weight on Plaintiff and another "tugg[ed]" his shackles because he "was trying to avoid [ ] being sedated" amid his erratic behavior, which included screaming "at the top of his lungs" earlier in the evening that he would not be examined.  (Id. at 7.) After Plaintiff was sedated and was no longer resisting, Dr. Goodman was able to complete the examination.  (Id.)

2.    The Reasonableness of the R&R Defendants' Actions

In light of the aforementioned backdrop and undisputed facts, it is immaterial whether or not Plaintiff was kicking, spitting, or biting during the Vehicle Extraction.  The R&R Defendants appear to have reasonably believed they needed to get Plaintiff inside the Hospital quickly and, in doing so, did not engage in any kind of drastic or disproportionate violence.  The R&R Defendants' actions in the Alleged Ketamine Restraint, as Plaintiff describes them, were also reasonable.  Given Plaintiff's admitted physical resistance and erratic behavior that included screaming "at the top of [his] lungs," it would have been exceedingly difficult to determine whether any medical or

22

evidentiary exigency existed without first sedating him.  (Id. at 7.) Because "[t]he evaluation of a police officer's use of force must be from the perspective of a reasonable police officer at the incident, not from hindsight," the fact that no drugs were ultimately found in Plaintiff's rectum is not a bar to finding the R&R Defendants' conduct reasonable.  Cruz, 232 F. Supp. 3d at 451.

The reasonableness of the force deployed against Plaintiff's undisputed resistance is further buttressed by the lack of a major injury.  It is undisputed Plaintiff had swollen and reddened wrists and ankles, along with rectal pain, which were temporary conditions that did not prompt follow-up treatment and were treated with over-the-counter pain medication, i.e.: Tylenol. (See Id. at 8.)  Although not dispositive, several courts have held similarly mild physical injuries can indicate force was appropriately used.  See, e.g., Rasmussen v. City of N.Y., 766 F. Supp. 2d 399, 407 (E.D.N.Y. 2011) (plaintiff's "lack of any injury beyond bumps and bruises suggests" no excessive force); Garcia v. Greco, No. 05-CV-9587, 2010 WL 446446, at *7 (S.D.N.Y. Feb. 9, 2010) ("pain to the left shin, right elbow, and face," along with brief hospitalization for difficulty breathing, suggested no excessive force); Garcia v. Greco, No. 05-CV-9587, 2010 WL 446446, at *8 (S.D.N.Y. Feb. 9, 2010) (collecting cases suggesting where plaintiffs sustained, inter alia, scrapes, bruises, swelling,

23

contusions, back and joint pain, a bloody lip, or split stitches, no excessive force took place).

In concluding material factual disputes precluded summary judgment on the Excessive Force Claim, Judge Wicks relied upon two cases where the factual dispute addressed whether officers deployed significant force against non-resisting plaintiffs. (See R&R at 19 (citing Esperanza v. City of N.Y., 325 F. Supp. 3d 288, 304 (E.D.N.Y. 2018); Graham v. City of N.Y., 928 F. Supp. 2d 610, 619 (E.D.N.Y. 2013)).) For example, in Esperanza, the material dispute concerned whether the plaintiffs posed an immediate threat, or were even actively resisting at all, when officers allegedly threw one plaintiff to the ground and slammed another against a vehicle. Esperanza, 325 F. Supp. 3d at 304. Likewise, in Graham, the court found triable issues where a non-resisting plaintiff stopped for a non-violent traffic infraction allegedly was dragged from his vehicle, shoved against it, and tightly handcuffed. Graham, 928 F. Supp. 2d at 619.

These factual disputes were outcome determinative: if a police officer did in fact slam a non-resisting plaintiff's face into a vehicle, such conduct would very likely be unreasonable. But no such drastic dispute exists in this case. Indeed, the facts of Esperanza and Graham are distinguishable from this case. Here, Plaintiff was engaged in active physical and verbal resistance,

24

unlike the plaintiffs in Esperanza and Graham.    And neither Esperanza nor Graham involves perceived medical exigencies or a parolee who had consented to searches of his body as a condition of his release.   (Id. at 4.)

Judge Wicks's qualified immunity analysis also cites to cases where factual disputes bore on whether substantial force was used against plaintiffs presenting little or no active resistance. (R&R at 20-21 (citing John v. City of N.Y., 406 F. Supp. 3d 240, 244 (E.D.N.Y. 2017) (denying qualified immunity where plaintiff claimed his hand was twisted, he was punched in the face, and was shoved onto the hood of a car during an arrest arising from a noise complaint); Frederique, 168 F. Supp. 3d at 472-73, 479 (finding factual dispute where plaintiff alleged he was repeatedly punched and kicked despite not resisting arrest and attempting to comply with officer demands); Smith v. Fields, No. 95-CV-8374, 2002 WL 342620, at *6 n.9 (S.D.N.Y. Mar. 1, 2002) (precluding summary judgment where plaintiff asserted he was slapped and kicked in the face after being placed in handcuffs).) These cases involve outcome-determinative disputes that potentially show drastic violence inflicted against a compliant or passive plaintiff, which are vastly different disputes than the one present in this case.

25

3.    Whether the R&R Defendants Violated a Clearly
      Established Right

In Judge Wicks's brief "clearly established" analysis, he quoted to language from Frederique, explaining "plaintiff's right under the Fourth Amendment to be free from excessive force [ ] is clearly established."   (R&R at 20 (citing Frederique, 168 F. Supp. 3d at 479).) This language is at odds with the Supreme Court's warning in Zorn, decided shortly after the R&R was issued, which explains "[p]rinciples stated generally, such as that 'an officer may not use unreasonable and excessive force,' do not suffice" in the "clearly established" analysis.  Zorn, 146 S. Ct. at 930 (quoting Kisela, 584 U.S. at 105).  To this point, neither the aforementioned authorities, nor those cited in Plaintiff's Reply, clearly establish that the R&R Defendants violated Plaintiff's Fourth Amendment rights.

Most of Plaintiff's cited cases fall into one of three categories, i.e., they: (1) explain the general proposition that searches into the body require a heightened level of probable cause; (2) address rectal searches undertaken by officers with no evidence pointing to the rectum specifically; or (3) concern searches undertaken for improper purposes or under materially different circumstances.  Under the first category, Schmerber v. California is cited for the broad proposition that "intrusions into the human body" must meet Fourth Amendment standards of

26

reasonableness.  (Id. at 4 (citing 384 U.S. 757, 767-68 (1966)).

This is too amorphous a concept to define any right at issue with

a "high degree of specificity."    Zorn, 146 S. Ct. at 930

("principles stated generally" do not suffice to clearly establish

a right) (citing Kisela, 584 U.S. at 105).[6]  People v. Hall, a New

York State court case, applied Schmerber to hold "specific and

articulable facts" are required for a rectal search.  10 N.Y.3d

303, 311 (2008).  This too is a general principle.[7]

Even if, ultimately, there were no drugs found in

Plaintiff's rectum, there were certainly facts pointing to the

possibility of drugs being there, including Plaintiff's "shifting"

in the car and appearance of his hemorrhoid.  (See supra pp. 3-

5.) For this reason, cases involving rectal searches where no facts

pointed to the rectum are unavailing.  For example, in Sloley v.

VanBramer, two state troopers conducted a strip and visual body

cavity search of a plaintiff following his misdemeanor arrest,

which was prompted when a drug-sniffing dog showed interest in his

vehicle.  945 F.3d 30, 35-37 (2d Cir. 2019).  The Second Circuit

denied summary judgment because clearly established law required

---

[6] In any event, Schmerber is not a qualified immunity case and did not address body cavity searches.

[7] But, in any event, here, there were specific and articulable facts which reasonably supported the search.  Moreover, Plaintiff did not object to the portions of the R&R recommending summary judgment be granted as to the unreasonable search claim.  (See R&R at 13-17.)

"a specific, articulable factual basis supporting a reasonable suspicion to believe the arrestee secreted evidence inside a body cavity," and factual disputes existed as to whether such suspicion was present. Id. at 40 (citing Hall, 10 N.Y.3d at 311). Similarly, Monroe v. Gould involved a plaintiff who, after being arrested for misdemeanor drug and weapon charges, was subjected to a body cavity search in a police station where police did "not point to plaintiff's physical appearance, apparent discomfort, or any suspicious actions or other articulable facts which might have suggested he was hiding something inside his body." 372 F. Supp. 3d at 204-05 (emphasis in original). And, in Wilson v. Aquino, police conducted routine searches "that yielded no weapons or contraband" and did not have any facts pointing to rectally-stored drugs before examination. 233 F. App'x 73, 77 (2d Cir. 2007); see also Sarnicola v. County of Westchester, 229 F. Supp. 2d 259, 268 (S.D.N.Y. 2002) (defendant "did not harbor any particular belief that [plaintiff] was secreting drugs" before searching a plaintiff's rectum). Unlike the guesswork in Sloley and Wilson, the lack of "apparent discomfort" in Monroe, and the lack of subjective belief in Sarnicola, the "shifting" motions in the car and the visual protrusion of a hemorrhoid upon visual examination demonstrate the R&R Defendants had a reasonable basis to suspect Plaintiff was concealing contraband in his rectum, thereby warranting a further search. (See supra at pp. 3-5.)

28

Cases concerning searches undertaken for improper purposes or under materially different circumstances are similarly unpersuasive. Ficklin v. Rusinko addressed a situation involving "an invasive body cavity search for no legitimate purpose, but instead solely to retaliate against and humiliate Plaintiff." No. 18-CV-06310, 2020 WL 5513812, at *6 (W.D.N.Y. Sept. 14, 2020). Here, by contrast, other than Plaintiff's unsubstantiated assertions to the contrary, the record demonstrates the R&R Defendants had at least a subjective reason to believe Plaintiff had rectally-stored contraband. (See Id.) Similarly, in Santiago v. City of Yonkers, a court declined to grant summary judgment on a search-based claim due to a factual dispute about whether an officer "inserted his fingers into plaintiff's rectum—in the context of either a sexual assault or a manual cavity," circumstances not present in this case. No. 13-CV-1077, 2015 WL 6914799, at *7 (S.D.N.Y. Oct. 30, 2015). Plaintiff's reliance on Harris v. Miller, is likewise misplaced, as it turned on a "violent and forceful" strip search of a female inmate by male officers and focused its reasoning heavily on the cross-gender nature of the search, which is not at issue here. 818 F.3d 49, 60 (2d Cir. 2016).

Accordingly, because the factual disputes identified by Judge Wicks are not material, the Court finds R&R Defendants' conduct was objectively reasonable in light of the facts that are

29

material and undisputed, and because no authority clearly established the R&R Defendants' conduct, under the specific factual scenario of this case, as unlawful, the Court SUSTAINS the R&R Defendants' objection as to qualified immunity.

### III. Remaining State Law Claims

Although federal courts have supplemental jurisdiction over state law claims, "a district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)). District courts have wide latitude in deciding whether to exercise supplemental jurisdiction. See Id. at 122. Because there are no remaining claims for which this Court has original jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiff's Assault and Battery claim and accordingly DECLINES TO ADOPT Judge Wicks's R&R to the extent it recommends exercising jurisdiction over the same.

### III. Unobjected Portions of the R&R

As Judge Wicks noted in the R&R, "failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision." Caidor v. Onondaga County, 517 F.3d 601, 604 (2d Cir. 2008). The Court accordingly

30

ADOPTS the portions of Judge Wicks's R&R to which there were no specific objections.

## Conclusion

For the stated reasons, IT IS HEREBY ORDERED that the R&R Defendants' Objection is SUSTAINED. Accordingly:

I.   The Court DECLINES TO ADOPT Judge Wicks's Report and Recommendation to the extent it recommends denying summary judgment as to the Excessive Force and Assault and Battery claims;

II.  Relatedly, the Court DECLINES TO ADOPT Judge Wicks's R&R to the extent it recommends exercising supplemental jurisdiction over the Assault and Battery Claim, and;

III. The Court ADOPTS Judge Wicks's Report and Recommendation to the extent it recommends granting summary judgment on Plaintiff's causes of action for Fourth Amendment unreasonable search/violation of privacy, malicious prosecution, abuse of process, fabrication of evidence, cruel and unusual punishment, substantive due process, and false imprisonment; and

Having rejected in part and adopted in part the R&R, the Court FURTHER ORDERS:

I.   Because the R&R Defendants are entitled to qualified immunity, the Court GRANTS their Motion for Summary

31

Judgment (ECF No. 234) as to the remaining federal claims; and

II.  Because there are no remaining federal claims, the Court declines to take jurisdiction over the remaining state law claims.

Judgment shall be entered for Defendants Mark Lugo and Alonzo Payton; the Clerk of Court is accordingly directed to CLOSE this case.

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:  June 9, 2026
        Central Islip, New York